Tina M. LANDSBERGER, Plaintiff
and Appellant,

v.

Richard R. LANDSBERGER,
Defendant and Appellee.

Civ. No. 10764.

Supreme Court of North Dakota.

March 26, 1985.

Rosenberg & Baird, Bismarck, for plaintiff and appellant; argued by Jerry W. Evenson, Bismarck.

Chapman & Chapman, Bismarck, for defendant and appellee; argued by Daniel J. Chapman, Bismarck.

MESCHKE, Justice.

Tina M. Landsberger appeals from a judgment in a divorce action placing custody of their two children with Richard R. Landsberger. We affirm.

When parents disagree on how to complete their responsibilities for raising their children, our courts must choose for them and, often, between them. Unfortunately, thousands of years of experience since Solomon's famous decision have not given judges any better way to determine what is best for the children, particularly when choosing between two loving and fit parents.

Tina and Richard ("Rick") Landsberger were married in December 1979. Their first child, Natasha, was born in November, 1979, and the second, Tessa, in May, 1983. Tina was still in high school when she first became pregnant. Both Tina and Rick completed their high school educations. At the time of trial, Rick was 25 years old and Tina was 23 years old.

Rick was steadily employed during the marriage, working for Bridgeman Dairy at the time of the trial. Tina spent most of her time during the marriage as a homemaker. In the summer of 1983, Tina sought and, by October, had obtained employment outside of the home.

Tina began this divorce action in early November, 1983. The Interim Order of the trial court gave Tina the care, custody and

control of the two children during pendency of the divorce action. The trial court rejected Rick's motion to amend the Interim Order to change custody to Rick during pendency of the action. After trial, on June 26, 1984, the trial court issued a Memorandum Opinion giving custody of the two children to Rick, concluding that "the custodial home proposed by Mr. Landsberger will for the foreseeable future provide a more stable, permanent, and satisfactory environment for the children." In keeping with the determination of custody, the possession of, and one-half of the equity in, their mobile home was also given to Rick, subject to payment of an additional amount out of the equity to Tina to balance division of property. Tina was given rights to visit the children on alternate weekends, one week in the month of December of each year, and four weeks each summer, following the court's decision that it was "in the best interests of the children to allow [her] continued extensive contacts with the children." Rick has had custody during this appeal.

Tina argues that the trial court's decision to give custody to Rick was clearly erroneous. She points out that the trial court, in applying the factors to be considered concerning the best interests and welfare of the children, under § 14–09–06.2, N.D.C.C., "called it a draw on five factors, ruled that two factors were not applicable, and left two factors upon which its decision apparently turned," in finding:

"Love, affection, and positive emotional ties exist between each parent and the children. Each party has the capacity and disposition to give the children love, affection, and guidance and to continue their education. They are both disposed to provide the children with food, clothing, medical care, and any other necessary remedial care, together with other material needs. Neither parent is morally unfit, and both are physically and mentally healthy. The children have no home, school, or community record and are not of sufficient intelligence, understanding, and experience to express a preference."

Tina submits that these findings show that the trial court's decision turned on subsections four and five of § 14–09–06.2:

"4. The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity."

"5. The permanence, as a family unit, of the existing or proposed custodial home."

Tina emphasizes that during nearly all of their marriage, she was at home and had primary responsibility for the care of the children. She cites this court's recognition that "continuity in a child's life, especially a young child, is one of the most important factors in determining that child's best interest." *In Interest [Custody] of D.G.*, 246 N.W.2d 892, 895 (N.D.1976); *Daley v. Gunville*, 348 N.W.2d 441 (N.D.1984). Tina asserts that this demonstrates that the trial court misapplied the two most important factors in this case.

The trial court recognized "that the custodial choice here is not an easy one," but went on to find that Rick was the parent who could be expected to maintain a more stable and satisfactory environment for the children. While recognizing that "during the first part of the marriage, the children's needs were met primarily by" Tina, the trial court also observed that during the last year or so of the marriage, when Tina began seeking some social life outside of the home in evenings, Rick normally babysat and, "commencing at that time, has since learned quite a bit about child care. His knowledge is not as extensive as hers, but he has the capacity of acquiring this knowledge and the resources to do so, having considerable family in the area." Rick "now focuses more upon" the children. Recognizing that both Tina and Rick were employed, the trial court noted that outside day care would be necessary for the children regardless of which parent has custody.

While the trial court considered that Tina is "strongwilled," that she believes "that a life limited to homemaking is not

adequate to fulfill her needs," and that she has now become a "career mother," it also found that Tina had greater difficulties than Rick in coping with marriage problems, that she was "occasionally unnecessarily harsh" in disciplining the children, and that she was the principal offender in arguments and in the use of foul language in front of the children. A "career mother" is not disqualified for custody of her children any more than a working father, but where each parent works outside of the home and where each has the ability and desire to care for their children, the trial court must necessarily weigh the circumstances on a fine and delicate scale. The trial court may consider "any other factors ... relevant to a particular child custody dispute;" N.D.C.C. § 14–09–06.2(10).

Rule 52(a), N.D.R.Civ.P. mandates that "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses," and that a trial court's findings of fact "shall not be set aside unless clearly erroneous."

■ A finding of fact is not clearly erroneous unless it has no support in the evidence or, although there may be some supporting evidence for it, this court is left with a definite and firm conviction that a mistake has been made. *Eszlinger v. Wetzel*, 326 N.W.2d 215 (N.D.1982).

■ There is evidence to support the trial court's finding that the custodial home proposed by Rick will provide "a more stable, permanent, and satisfactory environment for the children." We are not convinced that a mistake has been made. We are satisfied that the trial court's determination fairly weighed closely balanced evidence on appropriate factors in concluding that the best interests of the children lay with Rick for the foreseeable future. Neither the trial court nor this court has the wisdom of Solomon.

Accordingly, we affirm the trial court's determination of custody.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.