**Jeffrey L. BASHUS, Plaintiff and Appellee,**

v.

**Janet L. BASHUS, Defendant and Appellant.**

**Civ. No. 11159.**

Supreme Court of North Dakota.

Sept. 30, 1986.

Kapsner & Smith, Bismarck, for plaintiff and appellee; argued by Carol Ronning Kapsner.

Christensen & Thompson, Bismarck, for defendant and appellant; argued by Carma Christensen.

ERICKSTAD, Chief Justice.

Janet L. Bashus appeals from a judgment of divorce entered by the District Court of Burleigh County placing custody of her four children with their father Jeffrey L. Bashus. We affirm.

sonableness demanded of attorneys in criminal cases ensuring Micko a fair proceeding under our system.

Jeffrey (Jeff) and Janet Bashus were married in December 1973. They are the parents of four children. Their first child, Jeffrey, was born in September 1977; their second, Amanda, was born in September 1978; their third, Dustin, was born in August 1980; and their fourth child, Ashley, was born in September 1982. At the time of trial, Jeff was 31 years old and Janet was 30 years old. Jeff and Janet are both in good health. Jeff has pursued various occupations in the past but at the time of trial was employed for Nitro-Green as a lawn technician by his brother. At the time of trial, Janet was attending college classes at Bismarck Junior College leading towards a career in music education.

The Bashus family has lived in various locations during the marriage, primarily due to Jeff's pursuit of employment opportunities. In the fall of 1983 the family moved from Bismarck, North Dakota, to Great Falls, Montana, so that Jeff could obtain work at a feed plant. In Montana, Janet became involved as a singer in a country western band. Difficulties arose in the marriage and in June of 1984 they had a trial separation. Janet moved out of the home during part of the trial separation. Early in the summer of 1984, Jeff moved with the children back to Bismarck, North Dakota; Janet remained in Montana. Jeff commenced a divorce action in North Dakota, but the court refused to exercise jurisdiction. In August of 1984 Janet obtained an *ex parte* order in Montana allowing her to take the children back to Montana. A hearing was held on the issue of custody in Montana. Jeff sought and was awarded temporary custody of the children by the Montana court on September 4, 1984, and again moved with them back to North Dakota. Janet remained in Montana and later traveled with her boyfriend to Texas to assist his ailing father.

In December of 1984 Janet flew from Texas to Bismarck to attempt a trial reconciliation and lived in the home with Jeff and their children. When the trial reconciliation failed, Jeff moved out of the house. Jeff filed for divorce on July 19, 1985, and also filed a motion for interim order to provide him temporary custody. A hearing was held on the issue of temporary custody on August 22, 1985. The next day the court, in a Memorandum Opinion, granted temporary custody to Janet. Trial was held in Burleigh County District Court in December of 1985.

On January 8, 1986, the trial court issued a Memorandum Opinion granting Jeff and Janet a divorce based on irreconcilable differences and placed custody of the four children in Jeff.

On January 13, 1986, the trial court issued its findings of fact, conclusions of law, and order for judgment. The court made the following relevant determinations as to custody of the parties' four children:

"IV.

"The father is a fit and proper person to have legal and physical custody of the children. Further, that it would be in the best interest of said children to award custody to the father. Subsections 4 and 5 of N.D.C.C. 14–09–06.2 apply to favor custody being given to the father. The other factors operate equally in favor of both parties.

\* \* \* \* \* \*

"VI.

"The mother has, in the past, demonstrated that her first priority has been her career in music. The mother has had prolonged absence from the home on several occasions that can only be described as near abandonment.

"VII.

"The mother now seeks to integrate her children into her life's fabric and the court finds this commendable. However, the court finds that the father has already accomplished that by the creation of a family unit with only himself and the children. While that may have been done out of necessity because of the mother's absences, it is nevertheless an accomplished fact.

"VIII.

"The court finds that the father has demonstrated a capacity and willingness to maintain this family unit; the court is not entirely convinced that the mother has made that commitment.

"IX.

"The court has also considered the 'extended family' of the father, including his parents, as a factor in favor of the father."

The trial court, recognizing that the custodial decision was not an easy one, said: "[W]hat the legislature has given me for guidelines [§ 14–09–06.2, N.D.C.C.] in so many aspects appear to be equal between the two of you."

The trial court found that both Jeff and Janet were fit and able parents, and had done an excellent job of rearing their four children. However, the trial court determined that Jeff's demonstrated capacity and willingness to maintain the family unit and his "extended family" tipped the scales in his favor. The trial court was "not entirely convinced" that Janet was committed to maintaining the family unit.

Notice of entry of judgment was entered on January 16, 1986. On January 28, 1986, Janet filed her notice of appeal. Janet applied to the district court for a stay of the judgment in order for her to retain custody of the children during her appeal. On January 28, 1986, the district court issued an order denying stay. On January 30, 1986, Janet filed a request for stay of judgment pending appeal in this Court. Later that afternoon, this Court ordered that the application for stay pending appeal be granted.

The basic issue on appeal is whether or not the district court's custody award to the father was clearly erroneous.

It is well established that a trial court's determinations on matters of child custody are treated as findings of fact. *Lapp v. Lapp*, 293 N.W.2d 121 (N.D.1980); *Bosma v. Bosma*, 287 N.W.2d 447 (N.D.1980); *Hegge v. Hegge*, 236 N.W.2d 910 (N.D. 1975).

The findings of the trial court will not be set aside on appeal unless they are clearly erroneous. Rule 52(a), N.D.R.Civ.P.

A finding of fact is determined to be clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Lapp v. Lapp*, 293 N.W.2d at 125; *Nastrom v. Nastrom*, 284 N.W.2d 576 (N.D.1979); *Bender v. Bender*, 276 N.W.2d 695, 697 (N.D.1979); *Bohnenkamp v. Bohnenkamp*, 253 N.W.2d 439 (N.D.1977). Our scope of review is limited by the clearly erroneous rule, and rightly so, for the trial judge "is in a much better position to ascertain the true facts by listening to and observing the demeanor of the witnesses than we are by reading the cold record." *Lapp v. Lapp*, 293 N.W.2d at 125; *In re Estate of Elmer*, 210 N.W.2d 815 (N.D.1973).

Janet argues that the trial court's decision to grant custody to Jeff was clearly erroneous. Janet premises her argument on three points. Janet first contends that the trial court's finding that her prolonged absence can constitute near abandonment is not supported by the record. Janet next asserts that the trial judge misinterpreted testimony that she placed a higher priority on her career in music than for her children. Janet finally claims that the trial judge clearly erred by finding that subsections four and five of Section 14–09–06.2 applied to the benefit of the father.

This Court has established that the best interests and welfare of the child codified by our Legislature in Section 14–09–06.2, N.D.C.C.,[1] must dictate custody in a divorce action. *Lapp*, 293 N.W.2d at 125.

1. Section 14–09–06.2, N.D.C.C., reads:
   "*14–09–06.2. Best interests and welfare of child—Court consideration—Factors.* For the purpose of custody, the best interests and welfare of the child shall be determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:

The findings of the trial judge indicate that his decision turned on subsections four and five of Section 14–09–06.2:

"4. The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

"5. The performance, as a family unit, of the existing or proposed custodial home."

■ A study of the record reveals that Jeff has never had a prolonged absence from his children's lives. Even when Janet was granted temporary custody, Jeff remained in daily contact with his children. The record establishes that there were months during which Janet was absent from the family. Her only contact with the children during that time was by telephone every couple of weeks. While the trial judge may have harshly described Janet's prolonged absence as near abandonment, his finding is nevertheless supported by an examination of the record.

■ The trial judge found that Jeff's "extended family" was a factor weighing in his favor. Jeff's mother and father reside in Bismarck. Two of Jeff's brothers and their families reside in Bismarck. During the time that Jeff and the children were in Bismarck, while Janet was in Montana and Texas, Jeff's mother cared for the children while Jeff was at work. She remains available to assist in the care of the children. Testimony indicates that the activities of Jeff and the children have been family oriented. Jeff testified that the children spent time at their grandmother's home and their uncle's cabin having picnics and playing football with their cousins.

In *Landsberger v. Landsberger,* 364 N.W.2d 918 (N.D.1985), we affirmed the trial court's finding that the custodial home proposed by the father will provide a more stable, permanent, and satisfactory environment for the children. In doing so, we noted that the father did not have as extensive knowledge in child care as the mother, but that "he has the capacity of acquiring this knowledge and the resources to do so, having considerable family in the area." We concluded that the trial court's determination "fairly weighed closely balanced evidence on appropriate factors in concluding that the best interests of the children lay with Rick for the foreseeable future." 364 N.W.2d at 920.

We indicated the presence and importance of grandparents in custody decisions in *Lapp v. Lapp,* 293 N.W.2d 121. In *Lapp* the parents of either the father or mother babysat extensively for their granddaughter, Trina, while her parents were working. We noted:

"Both maternal and paternal grandparents reside in Bismarck, have spent a considerable amount of time with the child over the past seven years, and are apparently willing and able to continue to do so. Either Lynnette or Dale's parents have babysat for Trina nearly every day

1. The love, affection, and other emotional ties existing between the parents and child.
2. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.
3. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
4. The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.
5. The permanence, as a family unit, of the existing or proposed custodial home.
6. The moral fitness of the parents.
7. The mental and physical health of the parents.

8. The home, school, and community record of the child.
9. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
10. Any other factors considered by the court to be relevant to a particular child custody dispute.

"In any proceeding under this chapter, the court, at any stage of the proceedings after final judgment, may make orders about what security is to be given for the care, custody, and support of the unmarried minor children of the marriage as from the circumstances of the parties and the nature of the case is equitable."

over the course of their marriage. The grandparents have provided Trina with food, clothing, love, affection, guidance, and care while her parents were working." 293 N.W.2d at 129.

We determined that the grandparents' involvement was an appropriate factor in support of the trial court's decision to award Trina's parents joint custody. We concluded that children "need interaction and interrelationship with their parents, siblings, and *other persons* who may significantly affect the child's best interests." [Emphasis added.] 293 N.W.2d at 130.

We cannot say that the trial court placed undue emphasis on Jeff's extended family in determining the best interests of the children where, as in this case, the choice was between two fit and able parents.

Janet is musically gifted. She testified that she has sung for income for country western bands in Bismarck and in Montana. She testified that she was a full time student at Bismarck Junior College taking courses in music theory, music training, and introduction to music. She participates in jazz band, swing choir, and concert choir. She takes private vocal lessons. Once a month she teaches a class in music to the mentally retarded children in Bismarck. She said that she taught music "to learn, because I would like to go into the field of working with the handicapped children in music." The trial judge is in a better position than we are to ascertain Janet's convictions and her priorities in light of his opportunity to observe her demeanor and hear her testimony. We, on the other hand, have only the cold record which in this case also seems to support the trial court's findings including the one that Janet "has, in the past, demonstrated that her first priority has been her career in music."

In *Landsberger v. Landsberger*, 364 N.W.2d at 920, this Court affirmed the trial judge's decision to place custody of the parties' two children with their father. In *Landsberger,* as in the present case, the trial judge was faced with a difficult custody choice between two fit parents. The trial judge determined, as in this case, that the father would provide a more permanent and satisfactory environment for the children. Janet attempts to distinguish the *Landsberger* decision, but we are not convinced that there is a material difference between the two cases. It is especially appropriate that in close cases having to do with deciding custody of children between two fit parents that due regard be given to the trial judge's opportunity to determine the credibility of the witnesses. Rule 52(a), N.D.R.Civ.P.

In oral argument Janet seemed to be arguing that the facts support her contention that she was the primary caretaker during the greater period in the children's lives and if she erred, her error in judgment lasted only a few months while she went with her boyfriend to Texas and that she has now reassumed her role as primary caretaker even though currently a college student preparing for a career in music. If that is her argument, our view of that argument is that there is more to being a primary caretaker than the time spent in primary care. We cannot say that the trial court erred by placing custody of the child in the father with reference to his extended family and uninterrupted parental care.

There is evidence to support the trial judge's finding that "[t]he father is a fit and proper person to have legal and physical custody of the children," and "that it would be in the best interest of said children to award custody to the father." We are not convinced that a mistake has been made and accordingly do not find that the trial court's findings are clearly erroneous.

For the reasons stated in the opinion, the judgment appealed from is affirmed with costs on appeal to the appellee.

GIERKE, VANDE WALLE and MESCHKE, JJ., concur.

LEVINE, J., concurs in the result.