Kimberly S. THOMAS, a/k/a Kimberly
S. Nelson, Plaintiff and Appellee,

v.

Bernard J. THOMAS, Defendant
and Appellant.

Civ. No. 880374.

Supreme Court of North Dakota.

Sept. 26, 1989.

Bair, Brown & Kautzmann, Mandan, for plaintiff and appellee; argued by Dwight C.H. Kautzmann.

Vogel Law Firm, Mandan, for defendant and appellant; argued by Colette M. Bruggman.

MESCHKE, Justice.

Bernard Thomas appealed an amended custodial decree which permitted his former spouse, Kimberly Nelson, to move their children from Bismarck to Brainerd, Minnesota, and which denied his request for transfer of custody. We affirm.

Bernard and Kimberly were divorced in January 1985 in Bismarck. They had three children: Jason, then age twelve; Tammy, then age nine; and Tanya, then age eight. The decree placed principal custody of the children with Kimberly during the school year and with Bernard during the summer, with each parent to have reasonable visitation while the children were in the custody of the other.

In May 1987, Kimberly married Dan Nelson. In the fall of 1988, Dan's job required him to move to Brainerd. In early October 1988, planning to accompany Dan, Kimberly asked Bernard's permission to move the children with her to Brainerd. Bernard refused and moved to transfer custody so that he would have the children during the school year, with Kimberly to have them during the summer and with the other parent to have reasonable visitation during non-custodial periods. Kimberly then moved for judicial permission to change the physical residence of their children to Brainerd for each school year. Initially, she also sought temporary permission to do so pending hearings on the motions. But,

shortly, Kimberly withdrew the motion for temporary permission and the children stayed with their father in Bismarck on November 1 when she moved to Brainerd with Dan. After hearings in late November, the trial court permitted the change of residence and denied the transfer of custody. In the December 1, 1988 decision, the trial court directed that the children "should remain in the Bismarck school system until the Christmas holidays have passed but should be in Brainerd in time to enroll in the Brainerd school system when the schools reconvene after the holidays."

The trial court concluded that it was "in the best interests of the children to stay with their mother, even though she is changing her residence" and that it was also in the best interests of the children "to maintain a relationship with their father." Accordingly, the trial court permitted the change of residence, but required additional visitation at alternate Thanksgivings, Christmases and Easters with Bernard, "Teachers Convention holiday" with Bernard each year, and alternate fourths of July and a one-week vacation each summer with Kimberly. Bernard argued on appeal that the trial court's approval of the change of residence for Jason, Tammy, and Tanya was clearly erroneous.

NDCC 14–09–07 compels a custodial parent to get judicial permission to change the residence of children to another state if the noncustodial parent does not consent to the move. Although a showing of exceptional circumstances is not necessary, the custodial parent must show that the change of residence is in the best interests of the children. *Olson v. Olson*, 361 N.W.2d 249 (N.D.1985). The trial court has the principal responsibility for determining whether a change of residence is in the best interests of the children. *Hedstrom v. Berg*, 421 N.W.2d 488 (N.D.1988). This court will not substitute its judgment for that of the trial court unless the trial court's decision is clearly erroneous under NDRCivP 52(a). *Id.* We are not convinced that the trial court made a mistake in this case.

The trial court emphasized that the children had been doing well in their mother's

principal care since birth and in the family home that she had formed. The trial court found that "[t]here is a happy and loving relationship with both their mother and their stepfather Mr. Nelson." At the same time, the trial court recognized that the children "also love their father and have in fact expressed a wish to live with him rather than move to Brainerd. This is understandable, since they have always lived in Bismarck, have their friends here, and are familiar with the schools and the community. They also have extended family here." With the opportunity to evaluate the credibility of the children and each of the parents, it is evident that the trial court carefully weighed relevant factors.

■ The preference of a child who is capable of intelligently choosing between parents for custody can be a factor in a trial court's determination of that child's best interests. NDCC 14–09–06.2(9); *Mertz v. Mertz*, 439 N.W.2d 94 (N.D.1989). "[A] child's preference to live with the noncustodial parent may, in some instances, be motivated by goals and ambitions which undermine the significance of that preference and may, in fact, be detrimental to the child's best interests." *Id.*, at 97, n. 2. Consequently, a child's preference is "only one factor." Similarly, while community stability can also be a factor, it is not overriding and can be outweighed by other factors. *Roen v. Roen*, 438 N.W.2d 170 (N.D.1989). In this case, the trial court found that the children's preferences for remaining in Bismarck were not the paramount concerns. Those preferences were outweighed by the continuity and stability of the integrated family unit in which Jason, Tammy and Tanya had been residing with their mother. *See Novak v. Novak*, 441 N.W.2d 656 (N.D.1989). We cannot say that the trial court was wrong in the weight it attached to these relevant factors.

■ The trial court was mindful that the best interests of the children governed his

determination, but was also concerned that "we must be careful in cases of this kind not to convert a request for change of residency to a custody fight" when the "children have been in a stable, loving relationship with the parents and their stepparent." The trial court concluded that the move by Kimberly and Dan was necessary and that it "will not interfere with the status quo except for the limited effect it has on the visitation rights." The trial court carefully assessed the need for particularizing visitation, observing:

"If the court refuses to grant permission for the children to leave the state and the custodial parent leaves, the roles are reversed, but the problem is the same: The move has interfered with or restricted the ability of one parent to exercise visitation rights."

The trial court calculated, however, that the visitation factor was not as significant in this case as it sometimes might be. The trial court reasoned that the father's extensive summer visitation would remain the same. While "it must be recognized that the informal sort of 'running back and forth' which has been going on would no longer be possible," the trial court concluded that additional holiday visitation would balance the "informal" visitation practiced in Bismarck and would enable continuation of the nurture and stability furnished by Kimberly. Again, the trial court thoughtfully weighed important factors affecting the children.

■ Bernard argued that "testimony regarding Dan Nelson's relationship with his step-daughters is disturbing at the very least and raises issues that should be further developed...." Tammy testified that her stepfather touched her in ways that made her uncomfortable.[1] In effect, Bernard argued that the trial court did not treat this testimony with sufficient seriousness. Kimberly responded that, unjustifiably, Bernard was trying to turn this custo-

---

1. "FURTHER CROSS–EXAMINATION BY MR. KAUTZMANN:
    *    *    *    *    *    *
    "Q Has your mother ever been physically or verbally abusive to you?
    "A No.

"Q Has Mr. Nelson?
"A Well, he's sort of touched me, and I don't think he meant it, but it sort of makes me uncomfortable.
    *    *    *    *    *    *

dy dispute into a sexual abuse case. Tammy's stepfather testified that the touching had not been sexual, merely playful and usually with other people present. The trial court decided that the touching was "unintentional" and gave it no weight. The trial court heard and saw the witnesses, evaluated their demeanor, and concluded that the children had a good and loving relationship with their step-father. On this record, we will not second-guess that determination.

■ Citing *Wright v. Wright*, 431 N.W.2d 301 (N.D.1988), Bernard argued that "[t]he trial court erred by failing to affirmatively decide [Bernard's] motion to change physical custody even though its granting of [Kimberly's] motion to remove the children effectively denie[d] [Bernard's] companion motion." This argument falls flat. The trial court clearly recognized that approval of the move to Brainerd had the effect of denying the transfer of custody: "If I deny the request for change of residence of the children, their physical custody would change to [Bernard], which is to say it is conceded his countermotion for a change in physical custody would of necessity be granted." The trial court correctly treated the motions as inseparable and "intermingled."

The trial court understood that "Mrs. Nelson is moving regardless of this decision." Thus, the trial court was fully conscious that the move out-of-state was a significant change in circumstances necessitating an analysis of the best interests of the children. *Wright v. Wright, supra; Novak v. Novak, supra.* By permitting the change of residence, the trial court effectively concluded that the move did not necessitate a transfer of custody. Therefore, the trial court correctly denied Bernard's motion to transfer custody.

We affirm.

LEVINE and VANDE WALLE, JJ., concur.

"Q You said he touched you but you don't think it was on purpose?
"A I don't know.

          \*     \*     \*     \*     \*     \*

"FURTHER DIRECT EXAMINATION BY MR. VOGEL:
"Q Did you ever tell your dad that you felt uncomfortable with the way Mr. Nelson touched you?
"A No.
"Q Is it still a concern of yours?
"A You mean, does it still bother me?
"Q Yes.
"A Sometimes, yeah, sort of. When I think about it.
"Q Where did he touch you?
"A Well, just sort of like he hit me in the butt, I don't know, but then he would just sort of put his hand down here by my leg, by my thigh, and it just made me feel real uncomfortable.
"Q Did it happen more than once?
"A I can't really remember. I don't remember that much.
"Q You can feel comfortable here. Don't hold back now. We are all adults, and the judge has to determine what's in the best interests, whether you go with your mother or your father. Did you tell your mother about it?
"A No.
"THE COURT: How long ago are we talking about when this happened?
"THE WITNESS: Well, last—just last week. It was Thanksgiving is when he touched me down here, but he didn't touch that area, he just sort of touched my leg down there, and then about the last time we saw my mom is when he hit me in the butt.
"THE COURT: You mean, like in football, you see football players doing that all the time, that kind of touching, a kind of tap on the behind?
"THE WITNESS: No, it's just sort of like grabbed it.
"Q (by Mr. Vogel) Did you tell him not to do it any more?
"A I just went like golly with it, you know, or something.

          \*     \*     \*     \*     \*     \*

"FURTHER CROSS–EXAMINATION BY MR. KAUTZMANN:
"Q Tammy, this deal you were talking about earlier, that only happened once; is that true?
"A Yes, on the leg once. I think, the other, once or twice.

          \*     \*     \*     \*     \*     \*

"Q And you didn't tell him you were uncomfortable with that?
"A Well, I told him once—well, I felt uncomfortable, but I didn't really want to tell him, but then when he hit me and got my butt or something, I just went, quit it.

          \*     \*     \*     \*     \*     \*

"Q Tammy, I don't want to make more out of this than it is, and I don't want to underplay it, but I want you to tell me: Is that a big deal?
"A Sort of. It's nothing like really that big of a deal but just made me feel sort of uncomfortable is all.
"Q Okay. Can you handle it within yourself?
"A Yeah."

GIERKE, Justice, dissenting.

This Court will not reverse a trial court's finding of fact unless it is clearly erroneous. A finding of fact is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Sorum v. Schwartz,* 411 N.W.2d 652, 654 (N.D.1987).

Bernard Thomas contends that the trial court's approval of the change of residence of his children, Jason, Tammy and Tanya, from Bismarck, North Dakota to Brainerd, Minnesota was clearly erroneous. I agree with him and respectfully dissent from the majority opinion. In this case, on these facts, I am left with a definite and firm conviction that a mistake has been made by the trial court.

In determining the best interests of the children, trial courts are to consider the following ten factors, if applicable, as set out in Section 14–09–06.2, N.D.C.C.:

"1. The love, affection, and other emotional ties existing between the parents and child.

"2. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

"3. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

"4. The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

"5. The permanence, as a family unit, of the existing or proposed custodial home.

"6. The moral fitness of the parents.

"7. The mental and physical health of the parents.

"8. The home, school, and community record of the child.

"9. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

"10. Any other factors considered by the court to be relevant to a particular child custody dispute."

Based on the relevant factors of Section 14–09–06.2, N.D.C.C., as applied to the facts, I do not believe Kimberly Nelson has met her burden of proving that the change of residence of the children from Bismarck to Brainerd was in the best interests of the children.

From a review of the record, it is obvious that both Kimberly and Bernard love their children deeply and that their children love them. The trial court opinion states that the children also have a loving relationship with their stepfather, Dan Nelson. This seems to be in conflict with the fact that Tanya stated she really didn't like Dan. Further, Tammy testified that she sometimes feels uncomfortable around Dan Nelson because of his touching of her. Jason is the only child who did not speak negatively about Dan Nelson.

The second and third factors of Section 14–09–06.2, N.D.C.C., appear to be in favor of neither party as the record reflects that both Bernard and Kimberly love and care for their children deeply and are both able to provide the children with food, clothing and other material needs.

It is unquestioned that the children have lived their entire lives in Bismarck. Bernard has had physical custody of the children during the summer months since 1985, the year of the divorce. Kimberly has had physical custody of the children during the school months. Bernard exercised his visitation rights extensively, both on weekends and during the week. Both of these "environments" seem stable and satisfactory in light of the children's needs. Hence, this factor appears to favor neither party.

This Court has noted the importance of the extended family in determining the best interests of the child with respect to custody or change of residency actions. *Bashus v. Bashus,* 393 N.W.2d 748, 751 (N.D.1986). The extended family tends to lend to the

permanence of the family unit and can be a factor favoring a proposed custodial home.

In *Bashus*, Jeff Bashus contested the move of his children from Bismarck to Texas, where his ex-wife, Janet, was pursuing a singing career. Jeff's mother and father lived in Bismarck. Also two of Jeff's brothers and their families resided in Bismarck. On the other hand, Janet had no relatives in Texas, where she was residing at the time of the action. We properly noted that Jeff's extended family was a factor in his favor.

In this case, Bernard has a brother, Jim Thomas, who, together with his wife, Arlene, lives approximately 25 miles from Bismarck on the family homestead. Additionally, Jim and Arlene's children reside in the Bismarck–Mandan area. All of Bernard and Kimberly's children testified that they were very close to Jim and Arlene's family and that they very much enjoyed visiting them.

Testimony revealed that Jim and Arlene's daughter, Laurie, had lived with Bernard and Kimberly from February 1982 until April of 1985 and that Paula, Jim and Arlene's other daughter, had also lived with Bernard and Kimberly for a number of years. During this time, it appears that Jason, Tammy and Tanya developed a close family relationship with Jim and Arlene's family that still exists today. On the contrary, there is no evidence that either Kimberly or Dan have extended family in Brainerd, Minnesota. It seems clear that the permanence of the family unit, including the extended family, favors Bernard.

The sixth factor to consider, the moral fitness of the parents, has not been called into play. However, I am particularly disturbed by the testimony of Tammy concerning her relationship with Dan Nelson. Although the majority appears to be satisfied with the trial judge's determination that Dan's touching of Tammy was unintentional, I am troubled by this finding.

It appears that the trial court placed insufficient weight on Tammy's testimony that Dan's touching made her uncomforta-

ble and that it bothered her. At the time of trial, Tammy was a 13-year-old, seventh-grade student. Absent evidence indicating untruthfulness, I believe the trial court should have taken Tammy's testimony more seriously than it did. Based on Dan's testimony, the court found Dan's touching unintentional despite the fact that Tammy, when questioned by the court,[1] clearly testified that Dan had grabbed her buttocks and had placed his hand on her leg by her thigh, making her feel uncomfortable. Considering that Tammy has stated she "loved" Dan, it seems to be highly improbable that she would fabricate a story, under oath, concerning such serious value judgments. Thus, I believe that the trial court placed insufficient weight on Tammy's testimony.

The home, school and community records of the children is factor number eight of Section 14–09–06.2, N.D.C.C. The children have completed all of their schooling in Bismarck. All three children, while not doing outstanding school work, are fulfilling the requirements to advance each year in their school system. The trial judge, in his memorandum opinion, stated that the educational system in Brainerd is essentially identical to the school system in Bismarck. I believe that misses the point as one could find substantially identical school systems in numerous parts of the country. However, that does not necessarily mean that the attendance of the children in the new school system is in their best interests. I believe as a matter of common knowledge that uprooting children from their accustomed schools and school friends is very disruptive for children and would be a factor weighing against the move to Brainerd.

The ninth factor of Section 14–09–06.2, N.D.C.C., that the trial court must consider, if applicable, is the reasonable preferences of the children. This Court has noted that presumably a trial court gives more weight to the child's preference as the child matures. *Mertz v. Mertz*, 439 N.W.2d 94, 96 n. 2 (N.D.1989). This makes sense simply because a child's preference would pre-

1. For the transcript of the court's questioning of Tammy, *see* note 1 of the majority opinion.

sumably be more reasonable and informed as the child progresses in age and matures. However, I am not convinced that the trial court accorded greater weight to the children's preferences despite the fact that Jason, Tammy and Tanya were ages 16, 13 and 12 respectively at the time of trial.

I believe the trial court gave insufficient weight to the children's preferences to stay in Bismarck where their father, extended family and friends reside and where they have completed all of their education. The trial court concluded that the children's preferences were a natural reaction to being forced to choose between their old residence in Bismarck or a new residence in Brainerd. I believe such logic undermines the whole purpose of inclusion of the preference of child as a factor in determining the children's best interests. Thus, it appears the trial court seemed to disregard the children's sincere desire to remain in Bismarck despite the fact that at the time of trial, Jason, Tammy and Tanya were young teenagers.

In *Mertz, supra*, 439 N.W.2d at 96–97 n. 2, we recognized that in some instances, a child's preference to live with the noncustodial parent may be motivated by goals and ambitions which may be detrimental to the child's best interests.[2] In this case, there is no evidence that such ulterior goals and ambitions by the children are present. It appears that the children's preferences have not been influenced in any way by ambitions that would be considered detrimental to their best interests. I must note that this Court has given serious consideration to preferences expressed by children as young as nine or ten years old. *See Bergstrom v. Bergstrom*, 296 N.W.2d 490 (N.D.1980); *Guldeman v. Heller*, 151 N.W.2d 436 (N.D.1967). Absent evidence of coercion or duress, which there is no evidence of, the trial court should not have brushed the children's preference away as an understandable reaction to the proposed residence change.

I am mindful of the fact that a child's preference is only one factor to consider in determining the best interests of the child. However, where such clear and unequivocal preferences are given by three young teenagers and where the record is devoid of evidence of ulterior goals and ambitions, the preferences should be accorded greater weight than the minimal weight given to their preferences by the trial court.

Although Section 14–09–06.2 does not require a trial court to make express findings as to each factor enunciated in that section, it requires that the factfinder consider all factors. In *Novak v. Novak*, 441 N.W.2d 656 (N.D.1989), I joined in Justice Vande-Walle's special concurrence allowing a change of residence because in *Novak* there was evidence that the custodial parent, who retained custody, provided more discipline for the child and was less indulgent and permissive with the child than the noncustodial parent was. However, in this case, the evidence reflects that both Kimberly and Bernard provided adequate discipline for the children. Further, it is my opinion that the extended family in this case is a more significant factor than the extended family in *Novak*. The factors weighing against the move to Brainerd are, I believe, significantly greater than those present in *Novak*. Although I joined in Justice VandeWalle's concurrence in *Novak*, I believe the factors in this case weigh more heavily against moving the children from the environment of which they have become accustomed.

Understandably, the task of the trial court in determining the best interests of Jason, Tammy and Tanya was not an easy one. Although there is not one particular finding by the trial court pursuant to Section 14–09–06.2, N.D.C.C., that I find clearly erroneous, the trial court's analysis of all the factors in sum leaves me with a firm and definite conviction that a mistake has been made in determining the children's best interests. While I find that none of the ten factors explicitly weighs in favor of

---

**2.** In *Novak v. Novak*, 441 N.W.2d 656 (N.D. 1989), a change of residence case in which the child expressed a preference to live with the noncustodial parent, the majority observed that

the trial court found that the custodial parent provided more discipline for the child and was less indulgent and permissive with the child.

**440**

the children's change of residence to Brainerd, I believe several of the factors weigh in favor of keeping the children in Bismarck. In particular, the permanence of the family unit, including the extended family, favors keeping the children in Bismarck, the children's sincere preferences favor them staying in Bismarck, the children's home, school and community records favor them staying in Bismarck and finally, Tammy's testimony that Dan's touching made her feel uncomfortable together with Tanya's testimony that she really didn't like Dan clearly indicate that keeping the children in Bismarck would be in their best interests. Therefore, I believe the trial court's decision to approve Kimberly's motion for change of residence of the children was clearly erroneous under Rule 52(a), N.D.R.Civ.P., and thus I would reverse the trial court's decision.

ERICKSTAD, C.J., concurs.