**Wanda J. SCHESTLER, Plaintiff, Appellant and Cross–Appellee,**

v.

**Charles J. SCHESTLER, Defendant, Appellee and Cross-Appellant.**

**Civ. No. 910329.**

Supreme Court of North Dakota.

June 25, 1992.

Pringle & Herigstad, P.C., Minot, for plaintiff, appellant, and cross-appellee; argued by Carol K. Larson.

Edward J. Bosch (argued), Minot, for defendant, appellee, and cross-appellant. Appearance by Charles J. Schestler.

JOHNSON, Justice.

Wanda Schestler appealed from an amended judgment of the district court awarding custody of the parties' two minor children, Kristofer and Trista, to their father, Charles Schestler. We affirm.

Wanda and Charles were married during June 1985. They then lived together with Wanda's two daughters from previous relationships, Tara, born October 16, 1975, and Tosha, born February 10, 1978. During their marriage, Wanda and Charles had two children, Kristofer, born October 7, 1985, and Trista, born August 27, 1988. After about three and one-half years of marriage, the parties separated.

Wanda filed for divorce against Charles, and a divorce decree was entered on April 23, 1991. The trial court then ordered a home study and set a hearing during June 1991 on the issue of custody. Following the hearing, the trial court determined that it was in the best interests of Kristofer and Trista to be placed in Charles' custody with liberal visitation for Wanda. As part of its judgment, the trial court ordered another home study, to be conducted by the Ward County Social Service Department, "to determine what special needs the children have and what will be required for healthy development in this environment." The court also ordered Charles to attend parenting skills courses.

Wanda asserts on appeal that the trial court did not give appropriate consideration to Charles' physical abuse of her and its negative effect on the children. Domestic

violence is one of the specific factors to be considered, under Subsection 14–09–06.-2(1)(j), N.D.C.C., in awarding custody:

"1. For the purpose of custody, the best interests and welfare of the child is determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:

\* \* \* \* \* \*

"j. The existence of domestic violence. If the court finds that domestic violence has occurred, the court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm. As used in this subdivision, 'domestic violence' means domestic violence as defined in section 14–07.1–01." [1]

Also relevant to this issue is Subsection 14–05–22(3), N.D.C.C., which provides in relevant part:

"In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, this evidence creates the rebuttable presumption that awarding custody or granting visitation to the abusive party is not in the best interests of the child."

The legislative history of these statutes indicates that their successive development reflected the Legislature's understandable concern with the problems of domestic abuse.[2] An earlier version of Section 14–05–22, N.D.C.C., was amended in 1989 to incorporate "evidence of domestic violence" as a factor to be considered in determining issues of custody and visitation. S.L.1989, Ch. 178. In 1991, Sections 14–05–22 and 14–09–06.2, N.D.C.C., were further amended to provide that credible evidence of domestic violence would create a rebuttable presumption against awarding custody or granting visitation to the abusive party. S.L.1991, Ch. 148. The trial court was then required to make findings of fact to show that the approved custody or visitation arrangement protects the child and the family or household members.

The available legislative history indicates an intent that the trial judge not only consider this factor but make written findings regarding the effect of such abuse upon custody or visitation. Neither the statutes nor their legislative history indicate a priority for this factor over other statutory factors that the court is required to consider in deciding the delicate issue of child custody. However, a failure to make such findings when there is "credible evidence" of abuse could be a basis for reversal of the court's judgment.

---

1. Section 14–07.1–01(2), N.D.C.C. provides:
   "'Domestic violence' includes physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault, not committed in self-defense, on the complaining family or household members."

2. The minutes from the Senate Judiciary Committee discussions on the 1989 legislation indicate that proponents for making domestic violence a specific factor to be considered in custody cases, intended that evidence of domestic violence must be considered by the court in reaching its custody decision, but not that it necessarily be the dispositive factor. One proponent of this legislation, Bonnie Palecek, of the North Dakota Council on Abused Women's Services stated,
   "[O]ur intent is that it be considered as part of the other considerations that have been there and will continue to be there, not that there be an automatic awarding of custody to the non-abusive parent if there is any evidence at all of domestic violence."
   Representative Grant Shaft commented that the bill requires, "that if there is evidence of domestic violence, a judge must consider it."
   Palecek again testified before the House Human Services and Veteran's Affairs Committee regarding the 1991 amendments to this legislation. She stated that the amendments would make two changes to the current legislation: first, the amendments require the court to cite findings of fact "to show what weight they gave to the history of violence in making custody or visitation decisions," and secondly, the amendments create a rebuttable presumption that requires the court to take a person's "propensity toward violence into account."

The trial court found that during marital altercations Charles sometimes abused Wanda by hitting her and pushing her around. The court also found that there was inappropriate teasing by Charles, where he would touch or "twist" Tara and Tosha's breasts. Under Subsection 14–05–22(3), N.D.C.C., the court's finding of "violence" by Charles created a rebuttable presumption that it would not be in Kristofer or Trista's best interests to place them in Charles' custody. Under Rule 301(a), N.D.R.Ev., that presumption continues until "the trier of fact finds from credible evidence that the fact presumed does not exist."

The trial court expressly found that the statutory presumption was rebutted. The court made several specific findings tending to rebut the presumption. After finding that Charles had never directed violence toward Trista or Kristofer, the court observed that Charles has a "more stable home environment" and that there is more love and affection between Charles and the children than exists between them and Wanda. The court found that there was an "adverse interrelationship" between the younger children and Wanda's older daughters, Tara and Tosha. The trial court found that Charles' mother and her daughters would assist in providing care for Trista and Kristofer while Charles was at work and that this environment would be positive for the children. The trial court also expressed concern, as did the children's guardian ad litem, for Kristofer and Trista's safety in Wanda's home. There were several incidents where the children were injured while in Wanda's care. At least on one such occasion, when Trista swallowed the back of an earring, the injury was nearly fatal. Although these incidents could be explained as unavoidable accidents that happen to active young children, the guardian ad litem and the court apparently believed that, under the circumstances, they demonstrated some lack of care and concern by Wanda for the children's safety.

■ While the court's findings may not be crystal clear in defining which matters rebut the presumption, we do not interpret them as relying exclusively upon lack of violence toward the children as sufficient. Violence or lack of violence toward the children should not be ignored, but it would not be controlling.

The existence of domestic violence is one factor that the court must consider under Section 14–09–06.2, N.D.C.C., in making its custody decision. It is an important factor, but so are other required factors that the court considered in making its decision. Having carefully reviewed both the evidentiary record in this case and the trial court's findings, we are satisfied that the trial court gave consideration to the domestic violence factor and applied the statutory provisions on domestic violence. We are not convinced that the trial court made a mistake in finding that the statutory presumption against placing custody with Charles was rebutted by other credible evidence. Consequently, we will not set aside that finding. Rule 52(a), N.D.R.Civ.P.

■ Wanda also asserts on appeal that the trial court's custody decision was clearly erroneous. In a divorce proceeding, the trial court must award custody of the minor children based upon a determination of the best interests and welfare of the children, and the court's custody determination is a finding of fact that will not be set aside on appeal unless it is clearly erroneous. *Worden v. Worden*, 434 N.W.2d 341 (N.D. 1989). A finding of fact is determined to be clearly erroneous only when the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Bashus v. Bashus*, 393 N.W.2d 748 (N.D.1986). The trial court is vested with substantial discretion in matters of custody and in the determination of what is in the best interests of the children. *Dizayee v. Dizayee*, 414 N.W.2d 606 (N.D.Ct.App.1987). Simply because we might view the evidence differently does not entitle us to reverse the trial court. *Branson v. Branson*, 411 N.W.2d 395 (N.D.1987).

In discussing the prior domestic violence issue we recited many of the factors that the trial court found to be dispositive of its determination to award custody to Charles.

In addition to those factors, the trial court had the recommendations of Richard Hagar, the court-appointed guardian ad litem for the children, and Dr. Barney Greenspan, the Chief of Psychological Services at the North Central Human Services Center in Minot. Both of these individuals concluded that it would be in the children's best interests to be placed in Charles' custody. From reviewing the guardian ad litem's report and the trial court's memorandum opinion, it is quite obvious that both the guardian ad litem and the court were deeply concerned about the children's welfare and that the court agonized over this custody decision. The court obviously strove to do what was in Kristofer and Trista's best interests.

Our scope of review on this issue is properly limited by the clearly erroneous rule because the trial court, which had an opportunity to listen to and observe the demeanor of the witnesses, is in a much better position to ascertain the true facts than is this appellate court, which must rely on a cold record. *Freed v. Freed,* 454 N.W.2d 516 (N.D.1990). We are not convinced that the trial court made a mistake. We conclude, therefore, that the trial court's custody determination is not clearly erroneous.

In awarding custody of the children to Charles, the court took precautions by ordering another home study and by requiring Charles to attend parenting classes. The trial court retains continuing jurisdiction of all custody issues in the case, and by these precautionary measures, has demonstrated a real concern about this custody award and a willingness to exercise its continuing jurisdiction to change custody if that becomes necessary in Kristofer and Trista's best interests.

Charles filed a cross-appeal objecting to some of the trial court's findings, relative to the custody issue, that he asserts are not supported by the evidence. Those findings were obviously not prejudicial to Charles, because the custody award was in his favor and he has urged us to affirm it, without modification. Consequently, we need not further discuss this issue.

The judgment is affirmed.

ERICKSTAD, C.J., VANDE WALLE, J., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of MESCHKE, J., disqualified.

LEVINE, Justice, dissenting.

This case presents for the first time the application of NDCC § 14-05-22(3), the amended statute that the abused-women's advocates so ardently sought as the means to confront the serious societal problem of domestic violence and to minimize its impact on children. I am afraid, by affirming the trial court's misapplication of this law, we undermine the purpose of the amendment and weaken the legislative resolve. I therefore dissent.

One of the reasons for the amendment, which added a statutory presumption against awarding custody to the perpetrator of domestic violence, was the failure of judges to treat seriously allegations of domestic violence. At least, the perception was that the pre-amended version of the statute was ignored. *See* Testimony of Dena Filler, Executive Director, Domestic Violence Crisis Center, Minot; Bonnie Palacek, North Dakota Council on Abused Women's Services Coalition Against Sexual Assault in North Dakota, and comments of Representative Scherber and Representative Peterson re judges not taking seriously evidence of domestic violence. *Minutes of House Committee on Human Services & Veterans Affairs Hearing on S.B. 2355,* Mar. 4, 1991 (enacted as 1991 S.L. ch. 148) (hereinafter, "Minutes"). Another reason was to acknowledge that the perpetrator of family violence is ordinarily not a proper person to have custody of children. *See* House Concurrent Resolution 172, which was passed unanimously by the United States House of Representatives September 27, 1990, and United States Senate October 25, 1990 and is included in *Minutes.* The Resolution· expresses Congress' approval of legislation like NDCC § 14-05-22(3) because "state courts have often failed to recognize the detrimental effects

of having as a custodial parent an individual who physically abuses his or her spouse...."

The trial court, after finding the existence of domestic violence, followed the statute and recognized the rebuttable presumption that awarding custody to the perpetrator of domestic violence was not in the best interests of the children. So far, so good. But then, I believe, the trial court clearly stumbled. The Judge said that custody should be given to the perpetrator because "[n]one of the violence was directed at Trista and Kristofer. The presumption has been rebutted by ample evidence in that regard." In one fell swoop, the trial court denuded the statute of its good intent to put to rest, once and for all, the failure of courts to recognize that the abuse of one parent by another, even in the absence of physical abuse to the children, has serious detrimental effects on the children nonetheless and must not be either underestimated or worse, explained away. And that underestimation and rationalization are exactly what the trial court engaged in here. What good is a statutory presumption that is based on the legislature's recognition of the devastating effect on the entire family of domestic violence perpetrated against any family member, if that presumption may be overcome by a finding that the family violence does not include beating the children? That really is a ludicrous reading of a well-intentioned statute and it gives us a ludicrous, and pathetic, result insofar as it condones domestic violence that is not directly aimed at the children. It turns the statute on its head while thumbing our nose at the legislature.

The legislative history refers to *Dizayee v. Dizayee*, 414 N.W.2d 606 (N.D.Ct.App. 1987) [although it garbles the name], a case cited and relied upon by the majority, as an example of the bench's insensitivity to and ignorance of the dynamics of domestic violence. *See* Testimony of Bonnie Palacek, *Minutes.* In *Dizayee*, custody was awarded to the father. While the opinion by the court of appeals is cryptic, the record reveals evidence of domestic violence perpetrated by the father upon the mother in the presence of the child. On December 30, 1987, this court, in a split decision, denied the mother's petition for review. Thereafter, Ms. Palacek and others approached the legislature and succeeded in obtaining the enactment of an amendment which provided for a presumption to protect the victims of domestic violence, in particular, the children of the perpetrator. As Palacek put it in her remarks to the House Committee on Human Services and Veterans Affairs:

"SB 2355 would ... create a 'rebuttable presumption' that the parent with the history of violence is not a fit parent, or at least that some restrictions should be placed on visitation and/or custody to take that propensity toward violence into account. Right now the burden of proof falls on the victim, who must prove that the violence toward her has also had an effect on her children."

Yet, in this case, the trial judge, ignoring any propensity of the perpetrator toward violence, took the burden of proof that the legislature had removed from the shoulders of the victim of abuse and dropped it squarely back on. So much for Senator Yockim's statement of intent that "This bill really seeks to place the burden on the abusive spouse." *Minutes.* The trial court subverted the legislature's determinations that violence in a family has a bad effect on the children of that family whether or not the children have been directly assaulted and that courts must take that bad effect into account. *See generally Minutes.* In finding that the presumption was overcome by evidence that the children themselves were not physically assaulted, the trial court misconstrued, misinterpreted and misapplied the statute.

However, the majority apparently views the judge's other reasons for awarding custody to the perpetrator as somehow remedying or minimizing the egregiousness of the erroneous finding of no violence against the children. But I really don't believe that they do. Nor do I believe that the trial court intended these other findings to overcome the presumption. At least, I am not sure enough to blithely affirm its

decision. I believe the trial court found first that the presumption had been overcome by virtue of the fact that no violence was directed at Trista and Kristofer. After making that telling finding, the trial court then evaluated the statutory factors that trial courts weigh in making custody determinations under NDCC § 14–09–06.2, including factors that showed that the custody arrangement best protects the child "who is the victim of domestic violence from any further harm." *See* NDCC § 14–09–06.2(j). So, the trial judge found that "Charles is employed and can provide for their needs", which is a factor listed in NDCC § 14–09–06.2(c); "Charles has a more stable environment," which is a factor in NDCC § 14–09–06.2(d); "more love and affection between Charles and the children than between Wanda and the children," a factor under NDCC § 14–09–06.-2(a); etc.

Prior to the addition of the statutory presumption, domestic violence was simply one factor among many to be considered under NDCC § 14–09–06.2. *See, e.g., Dschaak v. Dschaak,* 479 N.W.2d 484 (N.D. 1992). We know the legislature does not do idle acts. Consequently, the new statutory presumption must be interpreted as giving domestic violence more weight in custody disputes than the other statutory factors. It also must follow, that the presumption (and the legislative intent fueling it) must not be so trivialized that it can be overcome simply by evidence of other statutory factors weighed in favor of the perpetrator because if that were the case, the presumption would add nothing to the resolution of custody disputes. Not only would this belie the legislative aversion to doing idle acts but it would contradict our customary approach of giving meaning to every word in a statute. So, I believe the majority seriously undermines, indeed, controverts, the legislature's intent in creating the presumption, when the majority says that domestic violence is but one factor to be considered along with other statutory factors. In effect, the majority has repealed the enactment of the statutory presumption.

I simply am not sure what the trial court would have done had it been correctly informed of the purpose and meaning of the amended statute. It could not and, therefore, I assume, would not have found any ameliorating effect from the fact that there was no violence against the children. It should, in light of the presumption, give more weight to domestic violence than it gives to other statutory factors. Of course, this dissent ignores entirely my position on the primary caretaker because I do not want to stir up the already rough waters of domestic violence and how the statutes addressing that serious subject should be applied in custody determinations.

I would reverse this case and remand it to the trial judge with a simple instruction to do it over and do it right. I would request that he apply the statute in the way it was intended by the legislature. Domestic violence is not just one factor among many to be considered. It is the only factor blessed by a presumption. The fact that Charles did not physically abuse the children does not overcome the statutory presumption that it is not in these children's best interests to have Charles, with his propensity for violence, as their custodian. Indeed, in my view, the fact that Charles directed his physical abuse exclusively at his wife is irrelevant. It is to protect the children from the ravages of domestic violence committed against any family member that this statute is directed.

I respectfully dissent.