1999 ND 58

**Donald Lee HAWKINSON, Plaintiff and Appellant,**

v.

**Lynda Ann HAWKINSON, now known as Lynda Ann McAllister, Defendant and Appellee.**

**No. 980281.**

Supreme Court of North Dakota.

April 6, 1999.

James R. Brothers, Wold Johnson, P.C., Fargo, ND, for plaintiff and appellant.

Douglas W. Nesheim, Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Donald Lee Hawkinson appealed from a trial court judgment granting Lynda Ann McAllister's request to move with their son, Donald John (D.J.), to Plymouth, Minnesota. We hold the trial court's decision is not clearly erroneous and therefore affirm.

I.

[¶ 2] D.J. was born February 16, 1987. Donald and Lynda divorced in January 1989. Lynda was granted sole custody with specific visitation rights for Donald. Both parties remarried after the divorce.

[¶ 3] At the time of the motion, Lynda and D.J. lived in Moorhead, Minnesota, with Lynda's new husband, Steven McAllister. Steven was employed by the Hershey Chocolate Company as the district sales manager for North Dakota, South Dakota, and northwest Minnesota. Steven's district was restructured and he was promoted and reassigned to Hershey's Minneapolis–St. Paul office in the spring of 1998. Lynda and Steven sold their house in Moorhead and purchased a house in the Minneapolis area.

[¶ 4] On May 14, 1998, Lynda brought a motion requesting permission to move D.J. to Plymouth, Minnesota. The trial court granted the motion on June 16, 1998. A detailed visitation schedule was established by the court. Donald appealed.

## II.

■ [¶ 5] A custodial parent must get judicial permission to move a child to another state if the noncustodial parent does not consent to the move. N.D.C.C. § 14–09–07. The custodial parent has the burden of proof to establish the proposed move is in the best interests of the child. *Keller v. Keller*, 1998 ND 179, ¶ 10, 584 N.W.2d 509. The trial court's decision whether the move is in the best interests of the child is a finding of fact and will not be reversed on appeal unless it is clearly erroneous. *Id.* A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if after reviewing the record we are left with a definite and firm conviction a mistake has been made. *Id.*

■ [¶ 6] When determining whether the move is in the best interests of the child, the trial court must apply the four-factor analysis enunciated in *Stout v. Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

4. Whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

[¶ 7] Donald argues the trial court's decision was based on a clearly erroneous interpretation of *Stout*. Although Donald acknowledges the trial court discussed the *Stout* factors, he asserts the decision was clearly erroneous because the trial court believed if an economic advantage to the move could be proven, the motion must be granted. He contends the trial court's mistaken belief is evidenced by the following statement:

> One of the things that I think is important for us to bear in mind is that if you look at what *Stout v. Stout* did, other than gut the existing law, was a statement by the majority that they didn't intend to overrule any of its precedence [sic]. Now I don't know quite how you— I don't know how you reconcile that frankly. I have looked at [*Stout*] and I've looked at its progeny and I— and you look at what they did in *Bauske* and I don't know how a Court fashions any kind of a finding that withstands the scrutiny frankly of the Supreme Court.

The trial court's statement was made at a motion hearing during a discussion of whether the court should interview D.J. about his views on the proposed move. The court determined D.J.'s testimony would be considered when ascertaining whether the move would be advantageous to his quality of life under the first *Stout* factor. Donald, however, asserts the trial judge's comments indicate the court's belief if any advantages to the move could be shown, the move must be granted without properly weighing the prospective advantages against the disadvantages that may occur as a result of the move. Donald argues *Stout* does not clearly signal the need to weigh the prospective disadvantages of the move when deciding whether the move is in a child's best interests. We agree with Donald in part. We agree a determination of a child's best interests requires a

weighing of both positive and negative factors. We disagree, however, with Donald's assertion the trial court failed to do so.

[¶ 8] A trial court must balance the prospective advantages of a proposed move in improving the custodial parent's and the child's quality of life with the potential negative impact on the relationship between the noncustodial parent and the child. This court has, at least implicitly, addressed this concern before. *Hedstrom v. Berg*, 421 N.W.2d 488, 489–90 (N.D.1988). In *Stout* at ¶ 25, while reviewing our prior cases on relocation, we acknowledged the *Hedstrom* decision "established that economic advantages of a move were factors to be considered and that the trial court should balance the move out of state with the negative impact on the relationship between the noncustodial parent and the child."

[¶ 9] After discussing the rationale of our prior relocation decisions, this court clearly stated in *Stout* at ¶ 34, we were not overruling that prior case law. Relying on prior cases including *Hedstrom*, we announced a four-factor analysis when deciding whether a proposed move is in the best interests of the child. *Stout*, at ¶¶ 33–34, However, to make explicit that determining the best interests of the child requires consideration of both positive and negative impacts of the proposed move, we restate the fourth *Stout* factor as follows:

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

The remaining three factors announced in *Stout*, at ¶ 34, are unchanged by this opinion.

[¶ 10] The trial court noted the economic advantage to D.J.'s custodial family was undisputed. Steven's employment position in the Fargo–Moorhead area was eliminated by Hershey. The new position provided a twenty-five percent pay increase, an annual bonus, additional benefits, and an opportunity for further career advancement. The economic advantage produced other benefits for D.J. Lynda will work fewer hours and will be able to spend more time with him. The trial court recognized D.J. "should benefit greatly by this increase in available parenting time."

[¶ 11] The trial court must weigh the advantages and disadvantages of a move while recognizing the importance of maintaining continuity and stability in the custodial family. *Paulson v. Bauske*, 1998 ND 17, ¶¶ 10–12, 574 N.W.2d 801. Although the emphasis on continuity and stability pertains primarily to the custodial parent-child relationship, this court has recognized "a stepparent naturally takes on a family relationship with children of a spouse and, consequently, the circumstances of each are interrelated." *Id.* at ¶ 10, 574 N.W.2d 801. We have long emphasized the importance of a move so a custodial family could stay together as a unit, thereby maintaining "the continuity and stability of the integrated family unit." *See, e.g., Thomas v. Thomas,* 446 N.W.2d 433, 435 (N.D.1989); *Hedstrom,* 421 N.W.2d at 489–90.

[¶ 12] The trial court noted *Bauske, Hedstrom,* and *Novak v. Novak,* 441 N.W.2d 656 (N.D.1989) were instructive as "supporting the importance of maintaining the continuity and stability of the custodial family in making a 'best interest' analysis." This is a correct interpretation of the case law on relocation. It is also a correct consideration under the first *Stout* factor.

[¶ 13] It is clear, however, without the benefit of the clarification which we announce today, the trial court did properly weigh both the advantages and disadvantages to D.J. of the proposed move. The trial court acknowledged Donald's extensive involvement in D.J.'s daily life. Donald was active in coaching D.J. in hockey and football and both Donald and D.J. expressed a desire that such involvement continue. This desire on the part of both father and son was considered. The court addressed the fact Donald would no longer be able to coach D.J.'s hockey and football teams after the move, contrary to D.J.'s express wishes. The court recognized the importance of sports in D.J.'s life, but

reasoned other experiences were equally valuable. The trial court stated: "[w]hen the Court balances the interest in athletics against the interest of maintaining the continuity and stability of the custodial family, athletics must necessarily be viewed as secondarily important."

[¶ 14] The trial court also discussed Donald's practice of maintaining weekly telephone contact with D.J.'s teacher, and Donald's direct interaction with D.J. regarding his school performance. After recognizing the positive impact of such practices on D.J.'s education, the court acknowledged the same weekly telephone contact could be maintained with D.J. and his teachers in Plymouth.

[¶ 15] Donald urges the disruption of D.J.'s contact with the extended family in the Fargo–Moorhead area was not properly considered as a negative factor mitigating against permitting the relocation. It is clear from the record the trial court did consider the presence of the extended family as a significant factor weighing in favor of denying the motion. However, the court reasoned given the distance and the ability to fashion a visitation schedule it was still able to foster contacts with the extended family, although necessarily reduced in frequency. Further, the court noted "[b]oth Lynda and Donald indicate that extensive and liberal visitation is possible."

[¶ 16] The parties do not contest the trial court's analysis of the second and third *Stout* factors. The court found Lynda's motive was genuine and was not intended to defeat or deter Donald's visitation. The court found Donald's motives for opposing the motion were genuine and based on a "deep concern and love" for D.J. With regard to the fourth *Stout* factor, the court established a schedule which included extensive visitation periods with Donald.

[¶ 17] The trial court's weighing of factors both positive and negative indicates the court correctly interpreted the law on relocation and properly applied the best interest test under *Stout*. We conclude the record in this case shows the trial court properly considered more than the economic advantages of the move under the first *Stout* factor.

[¶ 18] In this opinion we have explicitly recognized the trial court must consider the potential negative impact on the relationship between the child and the noncustodial parent. Nonetheless, without the benefit of the explicit language, the trial court properly considered what our case law has at least implicitly directed prior to this decision. The trial court correctly analyzed the *Stout* factors in determining whether the proposed move was in the best interests of the child. We conclude the court's decision to grant Lynda's motion to move with D.J. was not clearly erroneous. We therefore affirm the trial court's decision.

### III.

[¶ 19] Lynda argues we should award her legal fees under N.D.C.C. § 28–26–01 because "[n]o reasonable person could believe that Plaintiff would succeed with this appeal, especially considering the standard of review." We deny Lynda's request.

[¶ 20] Lynda's application of N.D.C.C. § 28–26–01 on appeal is misplaced. Under N.D.C.C. § 28–26–01(2) the trial court shall award reasonable attorney's fees to the prevailing party after finding the claim for relief was frivolous. Initial requests for attorney's fees on appeal are governed by N.D.R.App.P. 38. If this court "determines that an appeal is frivolous, or that any party has been dilatory in prosecuting the appeal, [we] may award just damages and single or double costs including reasonable attorney's fees."

> Rule 38 relates to an initial determination by the North Dakota Supreme Court. In contrast, § 28–26–01, NDCC, regarding "frivolous" pleadings and § 28–26–31, NDCC, regarding "untrue" pleadings made "without reasonable cause and not in good faith" involve determinations that are to be made initially by the trial court.

N.D.R.App.P. 38 (explanatory note).

[¶ 21] In this case, Donald raised a credible issue regarding the proper application of the *Stout* factors; thus, his appeal is not frivolous. We therefore deny Lynda's request for attorney's fees for this appeal.

## IV.

[¶ 22] We affirm the judgment granting Lynda permission to move D.J. to Plymouth, Minnesota, and deny Lynda's request for attorney's fees on appeal.

[¶ 23] VANDE WALLE, C.J, and NEUMANN, J., concur.

MARING, Justice, specially concurring.

[¶ 24] I concur in the result of the majority opinion and most of the reasoning of the decision. I, however, must disagree with the majority's conclusion that it is necessary to reword the fourth *Stout* factor. This revision of the fourth factor is done on the ground that clarification is needed as to whether the trial court must weigh and balance the negative impact on the relationship between the noncustodial parent and the child resulting from a move out-of-state.

[¶ 25] No clarification or rewording of factor four is warranted. A careful reading of the *Stout* opinion supports this position. *Stout v. Stout*, 1997 ND 61, 560 N.W.2d 903.

[¶ 26] All of the factors, with perhaps the exception of factor one, require a consideration of the relationship between the child and the noncustodial parent. Factor two requires the trial court to satisfy itself that "the motion to move is not motivated simply by a desire to defeat the visitation rights of the noncustodial parent or to hamper the opportunity of the noncustodial parent to maintain a relationship with the child." *Stout*, 1997 ND 61, ¶ 35, 560 N.W.2d 903. In addition, we directed the court to determine "the degree to which the custodial parent will comply with visitation arrangements after the move." *Id.* This factor without a doubt requires the trial court to weigh any negative effects in these regards on the noncustodial parent-child relationship.

[¶ 27] Factor three also requires the trial court to again consider the relationship between the noncustodial parent and the child. Under factor three the court "must consider the motive of the noncustodial parent and determine whether the opposition is based on a legitimate desire to maintain the parent-child relationship, or whether other motives are at work." *Stout*, 1997 ND 61, ¶ 36, 560 N.W.2d 903. Clearly this requires the court to examine the current noncustodial parent-child relationship in order to determine whether there is a loving and caring relationship or if the noncustodial parent's opposition to the move is merely a ruse.

[¶ 28] Finally, factor four goes to the very heart of a trial court's weighing and balancing of any negative effect an out-of-state move will have on the noncustodial parent-child relationship. The court must determine "whether a visitation schedule can be devised which can *reasonably* provide the foundation for maintaining and developing a parent-child relationship between the child and the noncustodial parent." *Stout*, 1997 ND 61, ¶ 37, 560 N.W.2d 903 (emphasis added). Factor four specifically requires the court to determine whether visitation can be fashioned which will provide "an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed." *Id.* at ¶ 34. In addition, we painstakingly in *Stout* pointed out that "[i]n every relocation dispute, the court must try to accommodate the competing interests of the custodial parent who desires a better life for herself and the children in a different geographical area; *the child's interest in maintaining a meaningful relationship with the noncustodial parent; the noncustodial parent's interest in maintaining a meaningful relationship with the child*; and finally, the state's interest in protecting the best interests of the child." *Id.* at ¶ 32 (emphasis added). We went on to state "the trial court must weigh and balance these factors based on the facts of each case. No one factor is to be dominant and a factor that has minor impact in one case may be the dominant factor in another." *Id.* at ¶ 37.

[¶ 29] Keeping in mind all of these interests, we fashioned a four-factor analysis in order to provide our trial courts with more specific and instructive guidance in these cases and to provide more uniform dispute resolution. *Stout*, 1997 ND 61, ¶ 28, 560 N.W.2d 903.

[¶ 30] The reality is divorce causes a significant change in parent-child relationships. The noncustodial parent's relationship with his child is relegated normally to rights of

visitation. That relationship is inevitably of a different character than the one of the custodial parent and child who reside together as a single family unit. It is impossible to physically satisfy both relationships without a true joint physical custody arrangement. Accordingly, we recognized the current literature provides that a modified visitation schedule providing for longer periods of continuous visitation can be used to satisfy the loss of weekly visitation in the event of a move. *Stout*, 1997 ND 61, ¶ 31, 560 N.W.2d 903. *Stout* clearly warns that merely a reduction in frequency of visitation alone is not enough to deny the motion to relocate. *Id.* at ¶ 37. The questions for the trial court include whether a reasonable visitation schedule can be fashioned to "preserve" and "foster" a relationship between the noncustodial parent and child; whether it will be complied with by the custodial parent; and whether the parties can financially support the schedule.

[¶ 31] For these reasons, I can find no justification to reword factor four.

[¶ 32] Mary Muehlen Maring

SANDSTROM, Justice, specially concurring.

[¶ 33] Except for my previously stated disagreements with *Stout v. Stout* and its progeny, *see, e.g., Stout v. Stout*, 1997 ND 61, ¶¶ 60–70, 560 N.W.2d 903 (Sandstrom, J., dissenting), I agree with the opinion of the Court.

[¶ 34] Dale V. Sandstrom