2002 ND 70

**Donald A. NEGAARD, Plaintiff and Appellee,**

v.

**Monica Wesley NEGAARD, n/k/a Monica Wesley Paper, Defendant and Appellant.**

**No. 20010251.**

Supreme Court of North Dakota.

April 18, 2002.

Rehearing Denied May 14, 2002.

Gary R. Sorensen, Sorensen Law Firm, Minot, N.D., for plaintiff and appellee.

Isabella Robertson, Robertson Law Office, P.C., Bismarck, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Monica Wesley Paper appealed a district court order denying her motion to change the residence of her minor children from Minot, North Dakota, to Quincy, Illinois. We conclude Paper did not show the change in residence is in the children's best interest, and we affirm.

[¶ 2] Paper and Donald A. Negaard divorced on October 20, 1999. Paper was granted primary physical custody of the parties' children, Shannon Rae Negaard, born in 1987, and Brittany Dawn Negaard, born in 1989. Negaard was given 10 specified days of visitation in November and December of 1999. After that, the divorce judgment provided Negaard visitation on alternating weekends, six weeks in the summer, and alternating holidays and birthdays. The judgment provided:

> The parties shall exert every reasonable effort to maintain free access and unhampered contact between the children and each of the parties, and to foster a feeling of affection between the children and the other party. Neither party shall do anything which may estrange the children from the other party or injure the children's opinion as to their mother or father or which may hamper the free and natural development of the children's love and respect for the other party.

The judgment also divided the parties' property, provided neither should pay spousal support, and required Negaard to pay child support of $2,838 per month.

[¶ 3] On March 13, 2000, Paper filed a motion alleging Negaard was allowed to maintain a dog at the family residence, Negaard took the dog without advising Paper, and removed a bicycle "not identified as an item of personal property awarded to Donald Negaard." The motion sought an order holding Negaard in contempt for trespassing and removing property, and ordering return of the property or the sum of $500. On April 17, 2000, Negaard moved for "an Order fixing structured visitation rights" because he "has been unable to exercise visitation with his children due to acts of parental alienation" by Paper.

[¶ 4] After a hearing, the district court issued an order on May 2, 2000, finding Negaard owned the bicycle and denying Paper's motion for contempt. On the motion for structured visitation, the court ordered, among other things:

> c) That commencing Saturday, May 6, 2000, and continuing every other Saturday thereafter until further order of this Court, Plaintiff shall have visi-

tation with the children from 9:00 a.m. to 7:00 p.m.

. . . .

f) That in the event the children have something scheduled on the date on which Plaintiff is to exercise visitation, Defendant shall submit the children's schedule in writing to the Plaintiff at least one week in advance of the visitation in order that Plaintiff can accommodate those scheduled events and times.

. . . .

o) That Defendant, Monica Paper, is not to interfere in any way with Plaintiff's visitation with the minor children.

[¶ 5] On November 3, 2000, Negaard moved for an order finding Paper interfered with his visitation, and finding her in contempt of court for failing to comply with the order of May 2, 2000. On December 12, 2000, the court rescheduled a pending hearing and ordered, in part:

3. That [Negaard] is entitled to visitations as follows:

a. On Saturday, December 23rd and January 6th, beginning at 10:00 a.m. and ending at 7:00 p.m. . . .

b. On Monday, December 18th and January 8th, beginning at 5:00 p.m. and ending at 9:00 p.m. . . .

4. That [Paper] shall encourage the children to enjoy the visitations, and she shall not interfere with the visitations in any manner.

On January 12, 2001, the court entered another interim visitation order, providing Negaard with visitation on alternating Saturdays from 10:00 a.m. to 7:00 p.m. and on Mondays from 5:00 p.m. to 7:30 p.m., and again ordering: "That [Paper] shall en-

courage the children to enjoy the visitations, and she shall not interfere with the visitations in any manner."

[¶ 6] On June 22, 2001, Paper filed a motion for judicial permission to change the residence of the children from Minot to Quincy, Illinois.[1] By order of August 3, 2001, the trial court denied the motion. In its memorandum and order denying the motion to change the residence of the children, the court noted two interim orders had been entered on Negaard's motion for fixed visitation and his motion to hold Paper in contempt and restrain her from interfering with his visitation rights, but there were no final orders on the motions. Upon considering the factors relevant to a motion to change the residence of the children, the court concluded:

The Court concludes that it is not in the best interests of the children that the motion be granted based on the following:

1. There are no significant advantages to improve the quality of living for the children, but there are for Monica.

2. Monica's motive for moving is to deter and defeat the visitation rights of Donald.

3. Donald's motive is to maintain his visitation rights.

4. There is no realistic opportunity for a visitation schedule to preserve and foster the relationship between Donald and his daughters that Monica would comply with.

■■■■ [¶ 7] To protect a noncustodial parent's visitation rights granted in a decree, N.D.C.C. § 14–09–07 provides a custodial parent "may not change the residence of the child to another state except

1. On June 22, 2001, the Honorable John C. McClintock, District Judge, who had issued the earlier orders, recused himself. On June

25, 2001, the Honorable Lester Ketterling was designated to preside over the case.

upon order of the court or with the consent of the noncustodial parent." *Zeller v. Zeller*, 2002 ND 35, ¶ 4, 640 N.W.2d 53. In determining if a custodial parent should be permitted to change a child's residence to another state, the primary consideration is the best interest of the child. *Id.*

A trial court's decision whether a proposed move to another state is in the best interest of a child is a finding of fact which will not be overturned on appeal unless it is clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. In reviewing a trial court's findings of fact, which are presumptively correct, we view the evidence in the light most favorable to the findings. We do not reweigh evidence or reassess credibility where there is evidence to support a trial court's findings. We will not reverse a trial court decision merely because we might have viewed the evidence differently. A choice between two permissible views of the weight of the evidence is not clearly erroneous. *Hentz v. Hentz*, 2001 ND 69, ¶ 6, 624 N.W.2d 694 (citations and quotation marks omitted).

▮ [¶ 8] In every relocation dispute, the court must try to accommodate the competing interests of the custodial parent seeking a better life with the child in a different geographical area; the interest of the child and the noncustodial parent in maintaining a meaningful relationship; and the state's interest in protecting the best interests of the child. *Stout v. Stout*, 1997 ND 61, ¶ 32, 560 N.W.2d 903.

A trial court must balance the prospective advantages of a proposed move in improving the quality of life of the custodial parent and the child with the potential negative impact on the relationship between the noncustodial parent and the child. *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 8, 591 N.W.2d 144. An improvement in the general quality of life for the custodial parent ordinarily will indirectly benefit the child. *Stout*, at ¶ 34.

▮ [¶ 9] The trial court must consider four factors in determining if a request to change a child's residence to another state is in the child's best interest:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Zeller*, 2002 ND 35, ¶ 6, 640 N.W.2d 53, (quoting *Hentz*, 2001 ND 69, ¶ 7, 624 N.W.2d 694).[2]

▮ [¶ 10] Paper contends the trial court's denial because she failed to prove

---

**2.** The first three factors were enunciated in *Stout v. Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903. The fourth factor, enunciated in *Haw-*

*kinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144, is a reformulation of a fourth factor previously enunciated in *Stout*.

the proposed move would significantly improve the children's quality of life is clearly erroneous. With regard to the first *Stout* factor, the court found Paper had been offered a position as a hospital pharmacist in Quincy, which would increase her net monthly income about $1000 and offer opportunities for advancement and teaching not available in Minot, and where there is, unlike in Minot, a resident rabbi to help with the children's instruction in their Jewish faith. Those prospective advantages of the proposed move certainly hold the potential for improving the quality of life enjoyed by Paper and the parties' children.

[¶ 11] The trial court found there were "no significant advantages to improve the quality of the children's lives by the relocation except to have a resident rabbi to help in their instruction in the Jewish faith." But it is apparent from the trial court's decision the first factor was not the primary reason or even a significant reason for denying Paper's motion to move to Quincy, Illinois. Rather, as we discuss below, the findings under the second and fourth factors permeate the trial court's reasoning.

[¶ 12] On the second *Stout* factor, the trial court concluded Paper's motive for the move was to deter and defeat Negaard's visitation, which Paper contends is clearly erroneous. The court made the following underlying findings:

> By reading through the post judgment proceedings and the affidavits presented for this hearing, the evidence shows a clear pattern that Monica wants to deter or end the visitation. She has already stopped visitation once without cause, and the visitations have been resumed on a more limited schedule. Although she has been directed by the Court not to interfere with visits, she continues to schedule events during scheduled visits

and to call the children while they are visiting for no good reason. The evidence is clear that she still wishes to continue the disagreement with her former husband and is using the daughters as allies to deter the daughters' relationship with their father. Monica has stated that either she or Donald should move. Although there are advantages for Monica to go to Quincy, the Court can reasonably infer that the distance between Donald and the daughters would additionally deter and defeat the visitation with Donald.

[¶ 13] A noncustodial parent's visitation with a child can be deprived or severely restricted only if it is likely to endanger the child's physical or emotional health. N.D.C.C. § 14–05–22(2). *McDowell v. McDowell*, 2001 ND 176, ¶ 28, 635 N.W.2d 139. Visitation with a noncustodial parent promotes the child's best interests. *Id.* The wishes and desires of the parents are not of paramount concern. *Id.* "[W]ithholding contact with a loving parent works against the best interests of the children." *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 19, 603 N.W.2d 896. "[R]egularly scheduled visitation is an integral part of developing a healthy relationship between a child and the non-custodial parent." *Iverson v. Iverson*, 535 N.W.2d 739, 742 (N.D.1995). "A parent does have a duty to not turn a child away from the other parent by 'poisoning the well,'" and "should, in the best interests of the children, nurture the children's relationship with the noncustodial parent." *Johnson v. Schlotman*, 502 N.W.2d 831, 834 (N.D. 1993). There is evidence supporting the trial court's findings, and they are not clearly erroneous.

[¶ 14] Paper has not challenged the trial court's finding that Negaard's motive in opposing the requested move is to maintain his visitation rights.

[¶ 15]   With regard to the fourth factor for consideration, the trial court concluded: "There is no realistic opportunity for a visitation schedule to preserve and foster the relationship between Donald and his daughters that Monica would comply with." In its underlying findings of fact, the trial court explained, in part:

> Based on Monica's previous conduct, the Court finds that there is no realistic opportunity for visitation that she would comply with. In her affidavit she has assured the Court that she would comply with its order if she can move. The Court questions the sincerity of that assurance based on her prior conduct. Judge McClintock has ordered her not to interfere with visitation which she has ignored. She has not been following court orders when she resides in the same state. The Court finds it incredulous to believe that she would comply with a court order when she is in another state.

Paper contends:

> The Trial Court's failure to see a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed and a likelihood that each parent will comply with such alternate visitation is clearly erroneous.

Paper asserts "she has plunged herself into counseling to deal with the issues ... the Trial Court does not even attempt to fashion a proposed visitation schedule for the girls.... A move must not be denied simply because visitation cannot continue in the existing pattern" and "the Trial Court ... placed undue weight on the number of days that Don's visitation is reduced and on the actions of Monica."

[¶ 16]   Paper has focused on the trial court's failure to order a different visitation schedule and its asserted overreliance on Paper's actions. "[T]he fact a noncustodial parent will not be able to maintain the same visitation schedule is not, alone, a basis for denying permission to the custodial parent to leave the state with the child." *Hentz,* 2001 ND 69, ¶ 9, 624 N.W.2d 694. "[A] move sought in good faith and to gain legitimate advantages for the custodial parent and the child must not be denied simply because visitation cannot continue in the existing pattern." *Stout,* 1997 ND 61, ¶ 37, 560 N.W.2d 903. "A visitation schedule which provides less frequent, but extended, visitation periods will preserve a non-custodial parent's right to foster and develop a relationship with the child." *Keller v. Keller,* 1998 ND 179, ¶ 16, 584 N.W.2d 509.

[¶ 17]   As in *Hentz,* 2001 ND 69, ¶ 9, 624 N.W.2d 694, however, "it is apparent it was the concern that [Paper] would not comply with the visitation order and foster the noncustodial parent's relationship with the child that caused the trial court to deny the move." A custodial parent's past behavior is a relevant fact for the trial court to weigh in considering his or her motion to change a child's residence to another state. *Id.* at ¶ 12. " 'Although it is impossible to be certain what might occur in the future, any prediction of the future requires some reflection into the past conduct of the parties.' " *Id.* (quoting *Reede v. Steen,* 461 N.W.2d 438, 442 (N.D. 1990)). It is clear the trial court was convinced that Paper would not comply with any visitation schedule it might order once she were given permission to move to Illinois. There is evidence to support the trial court's findings and we have not been left with a definite and firm conviction a mistake has been made.

[¶ 18]   We conclude the trial court's ultimate finding "that it is not in the best interests of the children that the motion be granted," and its underlying findings about

the parties' motives and Paper's likelihood of not complying with any visitation order are not clearly erroneous. The order denying Paper's motion to change the residence of the children is, therefore, affirmed.

[¶ 19] CAROL RONNING KAPSNER and WILLIAM A. NEUMANN, JJ., concur.

SANDSTROM, Justice, concurring in the result.

[¶ 20] For reasons set out in my previous separate opinions on this topic and in my separate opinion in *Berg v. Berg*, 2002 ND 69, I concur in the result.

[¶ 21] DALE V. SANDSTROM.

MARING, Justice, concurring.

[¶ 22] I write because I am of the opinion the trial court misapprehended the law and thus erred in the application of the first factor of the *Stout* analysis. In *Stout*, we said:

> In considering the prospective advantages to the move, a court shall not limit itself solely to enhanced economic opportunities for the custodial parent, but must also assess other less tangible benefits of the relocation. For example, the reason for relocation may be a desire to be close to a supportive extended family, to pursue educational opportunities, or seek an improved physical and emotional environment in which to raise the child. These examples are not intended to be exhaustive, but we emphasize that the trial court must consider non-economic advantages which are likely to improve the child's and custodial parent's general quality of life. We recognize that the improvement of the general quality of life for the custodial parent ordinarily will indirectly benefit the child.

*Stout v. Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903. The trial court, therefore, must consider both the economic and non-economic advantages of the move in improving both the custodial parent's and child's quality of life. Furthermore, the trial court must recognize that improvement in the quality of life of the custodial parent usually will benefit the child in some way. *Id.; Sumra v. Sumra*, 1997 ND 62, ¶ 13, 561 N.W.2d 290; *Goff v. Goff*, 1999 ND 95, ¶ 13, 593 N.W.2d 768. "A move which benefits the health and well-being of a custodial parent is certainly beneficial to the parent's child, and is consequently in the child's best interests." *State ex rel. Melling v. Ness*, 1999 ND 73, ¶ 9, 592 N.W.2d 565. A custodial parent's enhanced economic opportunities and ability to work at home would improve a child's quality of life. *Id.* at ¶¶ 10, 12. The trial court must recognize the importance of maintaining continuity and stability in the custodial family. *Tibor v. Tibor*, 1999 ND 150, ¶ 11, 598 N.W.2d 480. "The children's best interests are inextricably interwoven with the quality of life of the custodial parent, with whom they live and upon whom they rely emotionally." *Id.* at ¶ 13. In this case, the trial court found there would be both economic and noneconomic improvements to Paper's life, but found that there would be no significant improvements to the quality of the children's lives. The improvements to Paper's life would clearly have a positive effect on the quality of the children's lives. In my opinion, the trial court's finding on the first *Stout* factor is clearly erroneous.

[¶ 23] Because I agree with the majority opinion's analysis of the trial court's findings on the other *Stout* factors and the conclusion that the trial court relied primarily on its finding that Paper interfered with visitation, I concur.

[¶ 24] MARY MUEHLEN MARING.