2005 ND 9

**Michael E. SCHMIDT, Plaintiff and Appellant**

v.

**Kelley BAKKE, f/k/a Kelley Jo Schmidt, Defendant and Appellee.**

No. 20030377.

Supreme Court of North Dakota.

Jan. 19, 2005.

Patti J. Jensen, Galstad, Jensen & McCann, PA, East Grand Forks, MN, for plaintiff and appellant.

Mary Ellen Seaworth, Howe & Seaworth, Grand Forks, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] Michael Schmidt appeals a district court order granting Kelley Bakke's request to move two of their four children to Belle Plaine, Minnesota. We affirm.

I

[¶ 2] Schmidt and Bakke were married in November 1985 and divorced in February 1993. They had four children during their marriage. After the divorce, Bakke lived in Larimore and had permanent custody of the four children. Schmidt had liberal visitation rights and continued to live in the parties' original farmhouse near Larimore. Bakke has remarried since the divorce and has one minor child with her new husband.

[¶ 3] Bakke petitioned the district court on September 17, 2003, to move the three younger children to Belle Plaine, Minnesota, after Schmidt refused to consent to the move. Their eldest son lived with Schmidt during the summer of 2003 to accommodate his employment and continued to live with Schmidt after he reached the age of majority in August 2003. He graduated from Larimore High School in 2004. After learning of Bakke's desire to move to Belle Plaine, the second-eldest child, who was 15 years old at the time of the hearing, expressed a preference to stay in Larimore and live with his father so he could finish high school in Larimore. Bakke consented to the change of custody, and both older siblings have been living with Schmidt since the summer of 2003. After Bakke agreed to the change of custody, her petition to move to Belle Plaine concerned only the two younger children, who were 12 and 9 years old at the time of the trial.

[¶ 4] At the hearing on the proposed move, Bakke testified that the company she was working for in Grand Forks, North Dakota, had closed and relocated to

Bloomington, Minnesota, and she could continue working for the company at the new location. Bakke testified Belle Plaine is only about 20 minutes from Bloomington, and the new position will pay her $6.45 more per hour than she was earning at her job in Grand Forks. Bakke also testified her new husband was working in the Minneapolis area, and moving to Belle Plaine would eliminate the need for him to commute between Minneapolis and Grand Forks. Bakke testified Belle Plaine is a smaller community that provides many of the advantages that living in North Dakota provides, along with other activities facilitated by a larger community.

[¶ 5] The second-youngest child has been diagnosed with attention deficit hyperactivity disorder and oppositional defiant disorder. Bakke believes the Belle Plaine area and school have the resources to accommodate his disorders, including a community center, a YMCA center, and extracurricular activities such as tae kwon do, which was recommended by his doctor as a self-esteem builder.

[¶ 6] Schmidt argued the move is not in the children's best interest, because all of the activities touted as a benefit by Bakke are also available in the Larimore and Grand Forks area. Schmidt also contended the relocation was not financially viable, because of a large restitution order resulting from the criminal conviction of Bakke's new husband's employer, and Schmidt argued the district court should have admitted evidence of the criminal restitution order. Schmidt also argued that any advantage of Bakke's following her most recent employer was negated by her history of frequent job changes, Bakke having changed employment 10 to 12 times since she graduated from high school. He also argued that separating the siblings would be detrimental to the younger brothers, especially to the second-youngest child because of his need for stability and a strong sibling relationship.

[¶ 7] The district court ruled the two younger children could move with Bakke to Belle Plaine, Minnesota, because the move would benefit both Bakke and the children under the *Stout–Hawkinson* factors. *See Stout v. Stout,* 1997 ND 61, 560 N.W.2d 903; *Hawkinson v. Hawkinson,* 1999 ND 58, 591 N.W.2d 144. Under the first *Stout–Hawkinson* factor, the district court cited Belle Plaine's additional social, recreational, and academic opportunities for the two boys and said Bakke will not have to drive them around after work because these activities will be close to their home. The district court also said the job in Minneapolis is the difference between no job and a $16.50–per–hour job because of the closing of the Grand Forks plant. The district court found there was no improper motive under the *Stout–Hawkinson* second and third factors, and stated it believed Bakke would comply with the *Stout–Hawkinson* fourth factor by adhering to a new visitation agreement.

## II

[¶ 8] Bakke contends Schmidt failed to adequately raise or preserve his objection to her move to Minnesota. Bakke argues Schmidt's response to her "Motion to Move Out of the State of North Dakota" and supporting brief was improper because he responded with a "Brief in Support of Motion for Temporary Order, Change of Custody and Suspending Child Support." Schmidt's brief was not accompanied by a motion or notice of service, and Bakke argues it thus fails under N.D.R.Ct. 3.2.

[¶ 9] Rule 3.2(a), N.D.R.Ct., provides, in part:

Notice must be served and filed with a motion. The notice must indicate the time of oral argument, or that the mo-

tion will be decided on briefs unless oral argument is timely requested.

[¶ 10] To effectively appeal any proper issue, a party must have raised the matter in the district court so that the court could rule on it, and a failure to object to an irregularity at trial is a waiver of the issue. *Kautzman v. Kautzman,* 2003 ND 140, ¶ 10, 668 N.W.2d 59 (citing *Piatz v. Austin Mut. Ins. Co.,* 2002 ND 115, ¶ 7, 646 N.W.2d 681).

■ [¶ 11] Rule 3.2(b), N.D.R.Ct., provides:

> Failure to file a brief by the moving party may be deemed an admission that, in the opinion of party or counsel, the motion is without merit. Failure to file a brief by the adverse party may be deemed an admission that, in the opinion of party or counsel, the motion is meritorious. Even if an answer brief is not filed, the moving party must still demonstrate to the court that it is entitled to the relief requested.

[¶ 12] " 'Although a party who fails to respond or make an appearance assumes a substantial risk that the trial court will act favorably on the motion, the moving party has the burden of demonstrating to the trial court's satisfaction that he is entitled to the relief requested.' " *Follman v. Upper Valley Special Educ. Unit,* 2000 ND 72, ¶ 15, 609 N.W.2d 90 (quoting *City of Grand Forks v. Zejdlik,* 551 N.W.2d 772, 774 (N.D.1996)). A district court does not abuse its discretion by not considering an untimely response an admission. *State v. Haverluk,* 2000 ND 178, ¶ 27, 617 N.W.2d 652. In *Haverluk,* the defendant argued this Court should affirm the district court's holding because the State did not comply with N.D.R.Ct. 3.2(a) and N.D.R.Civ.P. 6(e). *Id.* at ¶ 25. We held the State assumed the risk of an unfavorable action by not responding on time with a brief, but the defendant still had to demonstrate he was entitled to the relief requested. *Id.* at ¶ 27.

[¶ 13] The district court never ruled on Bakke's objection to Schmidt's possibly untimely response and continued to hold hearings on the relocation motion. Bakke also said in her opening statements, after the court asked her where they were procedurally, that she would waive her objection to the timeliness of Schmidt's response.

[¶ 14] We hold Schmidt preserved his right to appeal because the district court did not consider Schmidt's response to be untimely and because it continued to hold hearings regarding the motion in which Schmidt objected to the move. Bakke, furthermore, waived any right she had to object to the timeliness of the motion when she told the district court, during opening statements, that she would waive her objection to the issue of timely response.

### III

■ [¶ 15] The custodial parent has the burden of proving, by a preponderance of the evidence, that a move is in the best interest of the child. *Dickson v. Dickson,* 2001 ND 157, ¶ 7, 634 N.W.2d 76. A district court's decision whether a proposed move to another state is in the best interest of a child is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Id.* at ¶ 8. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made." *Keller v. Keller,* 1998 ND 179, ¶ 10, 584 N.W.2d 509.

### IV

[¶ 16] Schmidt argues the district court improperly found it was in the children's

best interest for them to move to Minnesota with their mother.

[¶ 17] North Dakota statute requires a custodial parent to seek court approval to move out of state with the children if the noncustodial parent refuses to consent to the move. N.D.C.C. § 14–09–07. The statute and its application are based on the "best interest of the child" standard. *Hearing on H.B. 1585 Before the Senate Social Welfare & Veterans Affairs Comm.,* 46th N.D. Legis. Sess. (March 2, 1979) (testimony of Rep. Wayne Stenehjem, co-sponsor of bill); *Burich v. Burich,* 314 N.W.2d 82, 85 (N.D.1981); *Stout,* 1997 ND 61, ¶ 13, 560 N.W.2d 903; *Negaard v. Negaard,* 2002 ND 70, ¶ 7, 642 N.W.2d 916.

In every relocation dispute, the court must try to accommodate the competing interests of the custodial parent who desires to seek a better life for herself and the children in a different geographical area; the child's interest in maintaining a meaningful relationship with the noncustodial parent; the noncustodial parent's interest in maintaining a meaningful relationship with the child; and finally, the state's interest in protecting the best interests of the child.

*Stout,* 1997 ND 61, ¶ 32, 560 N.W.2d 903. Our Court has held the relevant factors in evaluating whether a custodial parent should be allowed to move children out of state are:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

. . . .

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Hawkinson,* 1999 ND 58, ¶¶ 6, 9, 591 N.W.2d 144. No single factor is dominant, and a minor factor in one case may have a greater impact in another. *Hentz v. Hentz,* 2001 ND 69, ¶ 7, 624 N.W.2d 694.

[¶ 18] An analysis of the best interests of the child in a relocation case involves a weighing of the advantages and disadvantages of a move while recognizing the importance of maintaining continuity and stability. *Hawkinson,* 1999 ND 58, ¶ 11, 591 N.W.2d 144. Therefore, the effect of the separation of siblings is a consideration in the trial court's analysis of the best interests of the child and whether to grant a motion to relocate a child out of this state. The *Stout–Hawkinson* factors are to be applied by the trial courts in relocation cases with the best interests of the child remaining the trial court's primary concern. *Stout,* 1997 ND 61, ¶ 34, 560 N.W.2d 903.

[¶ 19] Our Court has said that the preference of a mature child should be considered in determining a child's best interests. *Mosbrucker v. Mosbrucker,* 1997 ND 72, ¶ 11, 562 N.W.2d 390. We have also said it should be considered in the context of a motion to remove a child from the state. *Sumra v. Sumra,* 1997 ND 62, ¶ 14, 561 N.W.2d 290 (holding the preference of a child is a consideration in determining the best interests of a child in deciding a motion to relocate a child).

■■■ [¶ 20] It is true that "[a]s a general rule the courts do not look favorably upon separating siblings in custody cases." *BeauLac v. BeauLac*, 2002 ND 126, ¶ 16, 649 N.W.2d 210. We have not prohibited, however, the separation of children in every case and have affirmed the separation of siblings in a number of cases where children of sufficient maturity have stated preferences. *See id.* (affirming the trial court's decision to have the daughter remain in her father's custody and the son in his mother's custody, even though the mother moved with the son from Minot to Bismarck); *Loll v. Loll*, 1997 ND 51, 561 N.W.2d 625 (affirming the trial court's decision to split custody of twins, based upon the children's preferences, where one parent lived in North Dakota and one lived in Missouri); *Freed v. Freed*, 454 N.W.2d 516 (N.D.1990) (affirming a trial court's decision to separate two children primarily because the 15–year–old son stated a strong preference to live with his father). *But see McAdams v. McAdams*, 530 N.W.2d 647 (N.D.1995) (reversing the trial court's splitting custody of the parties' two children because the parent awarded custody would likely continue to alienate child from the mother); *Leppert v. Leppert*, 519 N.W.2d 287 (N.D.1994) (reversing the trial court's decision to separate the children between the mother and the father in part because of the mother's poisoning of the children's minds against the father).

■■■ [¶ 21] In the present case, Bakke had original custody of all four of the parties' children. In her motion to relocate, she requested that all three minor boys be allowed to relocate with her. After her motion, the second-eldest boy, who was then 15 years old, stated a preference to remain with his father so that he could finish high school in Larimore. Bakke agreed to stipulate to a change of custody to Schmidt. We recognize that this is not an initial custody determination. The trial court's analysis is made in the context of a motion to relocate with the children in Bakke's custody. Under the facts of this case, to deny a motion to relocate without more, would place the outcome in the hands of a 15–year–old, who after learning of the motion decides he does not want to move so he can complete high school with his friends.

[¶ 22] Although the issue of separating siblings was raised, the evidence in the record of the relationship between the 15–year–old and his two younger brothers, age 12, and age 9, is lacking in detail and substance. There is no evidence they spend a substantial amount of time together or share any activities or interests. When Schmidt was asked about the impact of the move on the children he merely said: "[T]he relationship wouldn't be as strong and they both look up to their older brother very much." He then added: "I shouldn't say they play together because there's such an age difference but they horse around together when they are at my place. I'm sure they will miss each other." This is not persuasive evidence upon which to deny a relocation motion. Further, the argument that the move will have a harmful effect is made against the backdrop of the parents stipulating to the separation of the children with the 15–year–old living with his father and the two younger boys living with their mother, stepfather, and half-sister. The record indicates that at the time of trial, the boys had been living apart already since the summer of 2003 and would not have been living together in any event. They perhaps would have seen one another through visitations with their parents, which is the same occasion they will see one another under the trial court's order. As admitted by their father, the boys have quite an age difference. Within two years, it is conceivable the 15–year–old will graduate from

high school and leave Larimore to further his education elsewhere and the boys could be separated by more than a four-hour drive. Here, the likelihood of the 15–year–old living in the same household with his younger brothers for any appreciable time is remote. Finally, it was the 15–year–old's stated preference not to move with his mother, two younger brothers, and half-sister. Again, a decision with which his parents agreed.

[¶ 23] The trial court recognized the preference of the 15–year–old to live with his father, which is in accordance with our case law regarding separation of siblings and preferences of a mature child. The trial court in its analysis stated: "[Schmidt] believes that this court should hesitate to separate the children from one another." The trial court then stated: "Dr. Yager [sic] felt that the children could adapt." Dr. Yeager is a clinical psychologist, who testified that she has worked with the parties' 12–year–old son. She was asked on direct examination whether a move would be harmful to him. She testified that "given the fact that he's a kid, moves are typically stressful for kids as they are for anyone in the family. I would expect that, you know, … it would cause some stress." She went on to testify that she would expect some deterioration in the 12–year–old's behavior for a time, but that she would expect that he would return to his baseline just like other kids do. She was told at trial that the 15–year–old would remain with his father in North Dakota. Although perhaps, we would prefer to have more of an analysis than the trial court made on this particular issue, it is clear that the trial court did consider the fact that relocation would separate the siblings and the effect it would have on them.

[¶ 24] The trial court gave the effect of separation of siblings proper consideration in the context of a relocation motion and on the record of this case. We, therefore, affirm the trial court's order granting Bakke's motion to relocate.

V

[¶ 25] Schmidt argues the district court erred by denying his request to enter into evidence a certified copy of a criminal conviction against the employer of Bakke's new husband. The district court ruled the evidence was not admissible because it was not relevant.

[¶ 26] Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.D.R.Ev. 401; *Interest of Lukens*, 1998 ND 224, ¶ 11, 587 N.W.2d 141. A district court has broad discretion when ruling whether proffered evidence is relevant, and we will not reverse that decision absent a showing of an abuse of discretion. *Lukens*, at ¶ 12. A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Id.*

[¶ 27] Schmidt claims the restitution judgment in the sum of $363,916.76 against Bakke's husband's employer is evidence the couple's move to the Minneapolis area is not financially feasible. Schmidt says this evidence is relevant to show the stability of the income to the Bakke family.

[¶ 28] Bakke claims this evidence is not relevant and Schmidt failed to make a proper offer of proof. Bakke claims the context of Schmidt's request for an offer of proof shows it was not made to preserve evidence for appellate review but was rather a statement taking exception to the district court's exclusion of the evidence. Schmidt asked the district court to have

the record reflect the exhibit as an offer of proof.

[¶ 29] North Dakota Rules of Evidence require the parties to create a record that will permit informed appellate review. *Wagner v. Peterson*, 430 N.W.2d 331, 333 (N.D.1988) (citing N.D.R.Ev. 103(a)(2), Explanatory ·Note). This Court recognizes the necessity of an offer of proof in order to review · a district court's exclusion of evidence. *Wagner*, at 333 (citing *Estate of Kjorvestad*, 375 N.W.2d 160, 167 (N.D. 1985)). Without an offer of proof, we are unable to determine whether the exclusion of testimony was prejudicial to the appellant. *Wagner*, at 333. · "No offer of proof is needed, however, if the substance of the evidence was apparent from the context within which questions were asked." *Id.* at 332 (citing N.D.R.Ev. 103(a)(2)). The language of Rule 103(a)(2) may excuse the failure to make an offer of proof if the question was in proper form on its face and was so framed as to clearly admit an answer favorable to the claim or defense of the party producing it. *Wagner*, at 332–33.

[¶ 30] We conclude Schmidt properly preserved this issue for appeal and the district court did not abuse its discretion by not allowing the judgment into evidence.

### VI

[¶ 31] The order of the district court is affirmed.

[¶ 32] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, J., dissenting.

[¶ 33] I agree with the majority that the separation of siblings properly should be considered in move-away cases. I dis-

agree with the majority's assertion that the district court considered the negative effect of separating siblings or that the district court knew it should or even could consider those effects. The separation of siblings has not previously been enunciated as a consideration under the move-away factors set forth in *Stout* and modified in *Hawkinson.* *See Stout v. Stout*, 1997 ND 61, 560 N.W.2d 903; *Hawkinson v. Hawkinson*, 1999 ND 58, 591 N.W.2d 144. Therefore, I respectfully dissent. ·

### I

[¶ 34] The majority relies heavily on Dr. Yeager's testimony to support its conclusion that proper consideration was given to the effect of separating the siblings.

[¶ 35] Dr. Yeager's testimony was related to how the second-youngest child would cope with the move, given his attention deficit hyperactivity and his oppositional defiant disorder, not to his ability to adjust to life without his older siblings. The line of questioning was related to how the new school and community would affect him and whether he would be able to adjust to the new environment. Dr. Yeager's testimony also indicates she is unsure how he will cope with the move.

> Question: Do you have any opinion in whether a move would be harmful to [the second-youngest child]?
>
> Answer: You know, I can't really. I · don't really feel like I can say very specifically what a move would be like · for him because I don't have anything to base it on. Since I've known him he's never moved. I don't have anything that would specifically tell me yes or no ·with [the second-youngest child]. I · would say given his, you know, given the fact that he's a kid, moves are typically stressful for kids as they are for anyone in the family. I would expect that, you know, he would, he would. be, it would

cause some stress. We might see some deterioration in his behavior for a time. I don't have any reason to believe, though, that he wouldn't eventually. Just like most kids do. I think that given the previous behavioral kind of difficulties he's had, whatever deterioration in his behavior might be somewhat more significant for him but, again, I would expect that he would return to his baseline just like other kids do.

[¶ 36] The testimony from Dr. Yeager regarding the family relationship seems, if anything, to indicate that separation from his father and siblings may be negative.

Question: And you [Dr. Yeager], ... talk[ ] about with regard to [the second-youngest child's] relationship with family members?

Answer: Mm-hmm.

Question: You go on, "his relationship with his mother and stepfather is quite strained and as mentioned above, he tends to direct a lot of negativity and defiance towards his stepfather."

Answer: Mm-hmm.

Question: "His mother also has had difficulties in managing his behaviors and [the second-youngest child's] relationship with her has been stressed as a result."

Answer: Mm-hmm

[¶ 37] Dr. Yeager's testimony is not in regard to how well the child will cope with being separated from his siblings. It seems, conversely, to indicate that being separated from his father and the rest of his siblings may adversely affect him.

[¶ 38] The majority attempts to bolster Dr. Yeager's testimony by saying that she was told at the trial that the second-eldest child would remain with his father in North Dakota. The transcript indicates she did not know until she was told during the trial—after the testimony relied on by

the majority—that the second-eldest brother would be separated from the younger siblings. The testimony relied on by the majority is located on page 202 of the transcript while Dr. Yeager's following testimony is located on pages 221 and 222 of the transcript:

Question: And are you aware what agreements have been reached with respect to the relocation of any of the other siblings?

Answer: I believe that one sibling was old enough to decide where he was going to stay and he preferred to stay back. Other than that I don't know.

Question: If I told you there's been an agreement placed on the record in the courtroom that of the four Schmidt children between my client and Ms. Bakke two of them will remain with their father and the parties are in dispute about where the other two will be or whether the relocation will be allowed.

Answer: Mm-hmm.

Question: So there would be two boys here, it would be [the second-youngest child] and his younger brother that she's asking to relocate.

Answer: Okay.

Question: And then you understand that [Schmidt] has another child here, correct?

Answer: Yes.

Question: And that Ms. Bakke has another child?

Answer: Mm-hmm.

Question: So all you knew was that one child was staying behind, correct?

Answer: That's all I knew although I know that there had been some—I know that given the other boy's age that moving was going to be, would maybe be difficult and I didn't know that there had been any agreement about where he would go.

[¶ 39] Dr. Yeager did not testify to the effect the separation would have on the siblings, and the record reflects that she did not even know the second-eldest boy was going to stay with Schmidt before she was told during the trial by Schmidt's lawyer. This is not enough relevant testimony to conclude whether the separation would harm the children.

## II

[¶ 40] The majority concludes the "trial court gave the effect of separation of siblings proper consideration in the context of a relocation motion and the record of this case." The district court mentioned *only* that "[Schmidt] believes that this Court should hesitate to separate the children from one another." That is all the district court said about the issue; there is no discussion, analysis, finding, or ruling on it. The district court merely reiterated Schmidt's concern that the separation would harm the siblings. This highlights how important it was for the district court to determine how the separation may affect the siblings.

[¶ 41] The district court's failure to consider the effects of separating the siblings is evident when viewing this Court's past holdings. This Court has generally looked unfavorably upon decisions that result in splitting siblings. *BeauLac v. BeauLac*, 2002 ND 126, ¶ 16, 649 N.W.2d 210 (citing *Leppert v. Leppert*, 519 N.W.2d 287, 291 (N.D.1994)); *McAdams v. McAdams*, 530 N.W.2d 647, 650 (N.D.1995).

[¶ 42] In cases involving relocation, this Court has long emphasized the importance of maintaining the continuity and stability of the family. *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 11, 591 N.W.2d 144; *see, e.g., Paulson v. Bauske*, 1998 ND 17, ¶¶ 10–12, 574 N.W.2d 801; *Thomas v. Thomas*, 446 N.W.2d 433, 435 (N.D.1989);

*Novak v. Novak*, 441 N.W.2d 656, 658 (N.D.1989).

[¶ 43] Other courts have generally held that siblings should not be separated in a relocation proceeding. *See In re Paternity of B.D.D.*, 779 N.E.2d 9 (Ind.Ct.App. 2002) (custody should be transferred from mother to father, if mother moved out of state, in order to keep the siblings together); *Richardson v. Richardson*, 802 So.2d 726 (La.App.2001) (in a relocation case, under the best-interest-of-the-child standard, the trial court erred in determining the interests of the children could be served by splitting their custody); *In re Williams*, 88 Cal.App.4th 808, 105 Cal. Rptr.2d 923 (2001) (reversing a lower court order splitting the children and ruling one parent should be awarded custody of both children if the other parent moves out of state); *In re Thielges*, 623 N.W.2d 232 (Iowa Ct.App.2000) (the court will not separate an older sibling from her younger sibling despite the older sibling's preference not to move).

[¶ 44] In light of this Court's consistent hesitation, and the number of other courts denying the separation of siblings in a relocation motion, the district court's reiteration that Schmidt is concerned with the separation falls far below the proper and necessary consideration needed to determine the best interest of the children. To ensure proper consideration is given to the decision to separate the siblings, I would require the district court to include "the potential negative effect of separating siblings" as a relevant factor that must be considered along with the other factors identified in *Stout* and modified in *Hawkinson*.

[¶ 45] Because the district court did not consider and reach a conclusion whether the separation of the siblings would have a negative effect on them, I would

reverse and remand this case to ensure the move is in the best interest of the children.

[¶ 46]   DALE V. SANDSTROM